STATE EX REL. DREW, Petitioner, vs. SHAUGHNESSY, Judge of the Municipal Court of Milwaukee County, Respondent.

*June 6—June 29, 1933.*

324

*Maurice A. McCabe* and *George A. Burns,* both of Milwaukee, for the petitioner.

For the state there was a brief by *William A. Zabel,* district attorney, *Fred M. Wylie,* deputy district attorney, and *Edward J. Yockey,* first assistant district attorney, and oral argument by *Mr. Wylie* and *Mr. Yockey.*

FRITZ, J. .Drew's application for leave to commence an original action for a writ of prohibition is based upon the contention that sec. 326.06 (2), Stats., under which the taking of depositions in Illinois was authorized by the mu-

nicipal court, is void because it is in violation of sec. 7, art. I, of the constitution of Wisconsin, and also the "due process clause" of sec. 1 in amendm. XIV of the federal constitution; and that therefore the municipal court is without jurisdiction to authorize the taking of depositions for use at the trial of Drew on the charges contained in the indictment.

It is, of course, true that jurisdiction to order the taking of the proposed depositions depends, primarily, upon the constitutionality of sec. 326.06, Stats. That proposition has not been passed upon by this court, and it may be considered reasonably open to debate. The taking of the proposed depositions will probably result in hardship to petitioner because of the expense, which will have to be incurred for the services of counsel, and otherwise, in appearing and examining witnesses at the taking of the depositions as to many transactions, which involve large amounts, and which took place during the course of five years. If the taking of the depositions should subsequently be held to be unauthorized, in law, in that the court's order was void because sec. 326.06 is unconstitutional, the entire proceeding would prove futile, and the petitioner would have been subjected to an unnecessary financial burden, without any right to reimbursement.

Under the circumstances, and for reasons discussed in *State ex rel. Hustisford L., P. & M. Co. v. Grimm,* 208 Wis. 366, 243 N. W. 763, there is sufficient showing of great and irreparable hardship to warrant this court in entertaining jurisdiction of an original action for purpose of considering the propriety of an order authorizing the taking of the depositions, and leave is granted to commence this action solely for that purpose.

Sec. 326.06, Stats., provides:

"(1) In any criminal or quasi-criminal action or examination in a court of record or before a judge thereof, depositions may be taken when allowed by an order of the court

or presiding judge; such order may be made only when the court or judge is satisfied that due diligence has been used in making such application, that the person whose deposition is wanted is a material witness, and is in imminent danger of death, or that he resides without the state, or is to be without the state, at the time of the examination or the trial, and that his attendance cannot, by the use of due diligence, be procured upon the examination or the trial. Such application by the defendant shall be accompanied by proof of notice to the district attorney of the time and place it is to be presented; and such an application on the part of the state shall be accompanied by proof of a like notice to the defendant or his attorney of record. The order shall direct whether the deposition shall be taken on oral or written interrogatories.

"(2) When the state procures such an order, its notice (in addition to what is required by section 326.09) shall inform the defendant that he is required to personally attend at the taking of such deposition, and that his failure so to do shall constitute a waiver of his right to face the witness whose deposition is to be taken; and failure to attend shall constitute such waiver unless the court or judge is satisfied, when the deposition is offered in evidence, that the defendant was physically unable to attend. If the defendant be not then in jail he shall be paid witness fees for travel and attendance; but, in case the defendant be in jail, the sheriff, at the request of the district attorney, shall at the expense of the county have the defendant in attendance at the taking of such deposition. If the defendant is in custody, leave to take such deposition on behalf of the state shall not be granted, unless all states in which the sheriff will travel with the defendant in going to the place where such deposition is to be taken shall have conferred upon the officers of this state the right to hold and convey prisoners in and through them."

On behalf of Drew it is contended that, although that statute expressly provides for the personal attendance of the defendant at the taking of the depositions, and that his failure so to do shall constitute a waiver of the right to face

the witnesses whose depositions are to be taken unless the court is satisfied, when the depositions are offered in evidence, that the defendant was physically unable to attend, nevertheless the taking of such depositions will deprive Drew of the right "to meet the witnesses face to face," as provided in sec. 7, art. I, Wisconsin constitution. That section, so far as here material, is as follows:

"In all criminal prosecutions the accused shall enjoy the right . . . to meet the witnesses face to face; . . ."

That section does not expressly prescribe that the requirement as to such confrontation can be satisfied only by confrontation on the trial in court; and it does not require the witnesses to face either the judge or the jurors.

That right of an accused, which the constitution secures, to be confronted by the witnesses, existed at common law, and, at common law, was subject to certain exceptions. In *Jackson v. State,* 81 Wis. 127, 131, 51 N. W. 89, this court said:

"Thus it appears that the right of the accused to meet the witnesses face to face was not granted, but secured, by the constitutional clauses mentioned. It is the right, therefore, as it existed at common law that was thus secured. That right was subject to certain exceptions. One of these exceptions was that the declarations of a murdered person, made when he was at the point of death and every hope of this world gone, as to the time, place, and manner in which, and the person by whom, the fatal wound was given, are admissible in evidence, notwithstanding such deceased person was not sworn nor examined, much less cross-examined. This court has frequently held that the constitutional clause quoted is no bar to the admission in evidence of such declarations. *State v. Cameron,* 2 Pin. 490; *Miller v. State,* 25 Wis. 384, 387; *State v. Martin,* 30 Wis. 216, 223; *State v. Dickinson,* 41 Wis. 299, 308. In these cases it is, in effect, said that such rule as to the admission of such dying declarations was well settled before the adoption of our

constitution, and that the same was not abrogated by the clause of the constitution quoted.

"The testimony of a deceased witness, given upon a former trial, would seem to be admissible upon the same theory. . . . In speaking of criminal cases, Mr. Cooley says: 'If the witness was sworn before the examining magistrate, or before a coroner, and the accused had an opportunity then to cross-examine him, or if there were a former trial on which he was sworn, it seems allowable to make use of his deposition, or of the minutes of his examination, if the witness has since deceased, or is insane, or sick and unable to testify, or has been summoned but appears to have been kept away by the opposite party.' Cooley, Const. Lim. (6th ed.) 387, citing numerous cases."

In *Spencer v. State,* 132 Wis. 509, 112 N. W. 462, it was held that the right, as secured by the constitution, was not violated by admitting at the trial the testimony of a witness who had testified at a preliminary examination of the defendant, but who had since become insane, or permanently incapacitated, mentally or physically, to appear and testify at the trial. In that connection the court said:

"In the case of illness or insanity or other physical or mental disability there has been considerable contrariety of opinion. Our examination of the authorities brings us to the conclusion that the English rule in criminal cases was that mere temporary illness or disability of the witness, where there was prospect of recovery, was not sufficient to justify the reception of the former testimony, but that it must appear that the witness was in such a state, either mentally or physically, or both, that in all reasonable probability he would never be able to attend the trial. When this fact satisfactorily appeared it was considered that the situation was practically the same as if the witness were dead. 1 Roscoe, Crim. Ev. (8th Am. ed.) 104, 105 (citations).

"There is much reason in this rule. The accused has met the witness face to face. He has had the opportunity to cross-examine. The witness is to all intents and purposes dead. Why should not the evidence already given be. ad-

mitted for the same reason that it would be admitted if the witness were in fact physically dead? We see no logical ground of distinction. It is true that there is a remote possibility that the court may be imposed upon by a feigned illness, but, on the other hand, there is far more danger that justice may miscarry or fail entirely if the testimony be excluded. The evidence of the sick or insane witness may be absolutely essential to conviction, and he may linger along for years until other essential evidence has disappeared and thus a serious crime may go unpunished. We are aware that there are authorities to the contrary of this view."

In *Inda v. State,* 198 Wis. 557, 224 N. W. 733, it was held that testimony of a witness taken on a preliminary examination was inadmissible where there was no proof that the witness was absent from the state, or of his death or incapacity, and no specific testimony of diligence to procure him. In that connection the court said:

"The reason for permitting the evidence in any case, as given by the courts, is that the ends of justice may be defeated otherwise. Of course, the ends of justice equally demand that the defendant have a fair trial. It is generally conceded that the presence of a witness before the jury when he gives his testimony is of great aid to a jury in testing his credibility and the weight to be given his testimony. He should be produced, if possible to produce him. . . .

"The rule, however, is based on the law of necessity to promote justice. The necessity must be first shown. In case of the death of the witness or his permanent incapacity to testify, the necessity is generally conceded. The absence of the witness from the state has less support, but the weight of authority seems to be in favor of admitting the evidence. . . ."

As appears from the foregoing quotations from opinions filed in cases in this state, the rule as to confrontation by witnesses is sufficiently complied with under the constitution, as well as at common law, if the accused met the witnesses face to face, at the time that they were testifying,

and if he then had the opportunity of cross-examining them. That is the primary purpose, and, when complied with, fully satisfies the rule as to confrontation. The personal appearance of the witnesses before the judge and the jury, on the trial, is of advantage also. However, that is but a secondary purpose and that is not a right secured to an accused at common law, or under the constitution.

The following statements in vol. 3 of Wigmore on Evidence (2d ed.) secs. 1395, 1396, are well warranted by the authorities which are cited and discussed in connection therewith:

"It is generally agreed that the process of confrontation has two purposes, a main and essential one, and a secondary and subordinate one:

"(1) The main and essential purpose of confrontation is to secure for the opponent the opportunity of cross-examination. The opponent demands confrontation, not for the idle purpose of gazing upon the witness, or of being gazed upon by him, but for the purpose of cross-examination, which cannot be had except by the direct and personal putting of questions and obtaining of immediate answers. That this is the true and essential significance of confrontation is demonstrated by the language of counsel and judges from the beginning of the hearsay rule to the present day. . . .

"(2) There is, however, a secondary advantage to be obtained by the personal appearance of the witness: the judge and the jury are enabled to obtain the elusive and incommunicable evidence of a witness' deportment while testifying, and a certain subjective moral effect is produced upon the witness. . . .

"This secondary advantage, however, does not arise from the confrontation of the opponent and the witness; it is not the consequence of those two being brought face to face. It is the witness' presence before the tribunal that secures this secondary advantage,—which might equally be obtained whether the opponent was or was not allowed to cross-examine. In other words, this secondary advantage is a result accidentally associated with the process of con-

frontation, whose original and fundamental object is the opponent's cross-examination. . . .

"The question, then, whether there is a right to be confronted with opposing witnesses is essentially a question whether there is a right to cross-examine. If there has been a cross-examination, there has been a confrontation. The satisfaction of the right of cross-examination disposes of any objection based on the so-called right of confrontation.

"Nevertheless, the secondary advantage, incidentally obtained for the tribunal by the witness' presence before it— the demeanor-evidence,—is an advantage to be insisted upon wherever it can be had. No one has doubted that it is highly desirable, if only it is available. But it is merely desirable. Where it cannot be obtained, it need not be required. It is no essential part of the notion of confrontation; it stands on no better footing than other evidence to which special value is attached; and just as the original of a document or a preferred witness may be dispensed with in case of unavailability, so demeanor-evidence may be dispensed with, in necessity. . . ."

In the case at bar, the state's contentions that the witnesses whose depositions are to be taken, and the documents and records which they are then to produce, are otherwise unavailable, are not successfully challenged. Likewise it appears that it is necessary to procure that evidence by taking the depositions in order to avoid a miscarriage of justice, and that all of the other facts and conditions exist which are essential to authorize the proposed order for taking of depositions under sec. 326.06, Stats. Under all the circumstances, the existing situation is such as to render imperative the procurement of the required proof in so far as that can possibly be done without violating or disregarding the constitutional rights of the defendants.

The provisions of sec. 326.06, Stats., for notice to the accused of a hearing on an application for an order for the taking of depositions, and for notice to him of the taking thereof, and for his attendance and of his opportunity to

confront and cross-examine the witnesses, are designed to so completely safeguard the defendants' rights that there is no violation in the prescribed procedure of the due process of law requirements of the Fourteenth amendment of the federal constitution. Although, in authorizing the procurement, in anticipation of a trial, of the testimony of witnesses whose testimony would otherwise be unobtainable, the statute somewhat enlarges the use of testimony taken otherwise than on the ultimate trial, that extension of the rule does not disregard or violate, but, on the contrary, fully recognizes and safeguards the primary and essential purpose of an accused's right of confrontation. Consequently, that extension of the rule, in the interests of justice, is not of such fundamental character as to deprive an accused of due process of law. As the court said in *West v. Louisiana,* 194 U. S. 258, 263, 24 Sup. Ct. 650, 48 Lawy. Ed. 965, in relation to the use on a trial of testimony of a non-resident theretofore taken on a preliminary examination:

"Coming to a decision of the question before us, we are of opinion that no federal right of the plaintiffs in error was violated by admitting this deposition in evidence. Its admission was but a slight extension of the rule of the common law, even as contended for by counsel. The extension is not of such a fundamental character as to deprive the accused of due process of law. It is neither so unreasonable nor improper as to substantially affect the rights of an accused party, or to fundamentally impair those general rights which are secured to him by the Fourteenth amendment. The accused has, as held by the state court in such case, been once confronted with the witness, and has had opportunity to cross-examine him, and it seems reasonable that when the state cannot procure the attendance of the witness at the trial, and he is a non-resident and is permanently beyond the jurisdiction of the state, that his deposition might be read equally as well as when his attendance could not be enforced because of death or of illness, or his evidence given by reason of insanity.

"We say this with reference to the question whether the admission of the deposition fails to give the accused 'due process of law,' as provided for in the Fourteenth amendment. . . ."

As sec. 326.06, Stats., is valid, and it was within the jurisdiction of the trial court to order the taking of the proposed depositions so that the ends of justice would not be defeated, the respondent's demurrer to Drew's petition, which by stipulation is to stand as the complaint, must be sustained, and the alternative writ of prohibition must be quashed.

The court's order allowing the prosecution twenty days, after it completed taking its evidence by the proposed depositions, within which to furnish the bill of particulars demanded by Drew and Rosenberg, does not involve any such irreparable hardship to the petitioner as to warrant this court in entertaining original jurisdiction for the purpose of considering the propriety of that order. It is well established that, generally:

"The granting or refusal of a bill of particulars rests within the discretion of the court to be exercised with reference to the circumstances of the peculiar case; defendant is not entitled to the bill as a matter of right, and the ruling of the trial judge upon the motion will not be disturbed by an appellate court where such discretion has not been abused." 31 Corp. Jur. pp. 751, 752.

Likewise, it is well established that *mandamus* will not lie to control the exercise of judicial discretion. *State ex rel. Fourth Nat. Bank v. Johnson,* 103 Wis. 591, 622, 79 N. W. 1081; *State ex rel. Wagner v. Dahl,* 140 Wis. 301, 122 N. W. 748. Although in a prosecution for embezzlement, when the charges in an indictment are rather general, and there has been no disclosure by the state of the particulars of the charge, a bill of particulars should be furnished an accused on his application (*Secor v. State,* 118

Wis. 621, 95 N. W. 942), it is still to some extent within the discretion of the court to prescribe the manner and the time in which such bill of particulars is to be furnished prior to the ultimate trial, and so as to fully enable the accused to prepare for that trial.

The order which petitioner seeks to have reviewed did not deny Drew's application for a bill of particulars. On the contrary, the court granted that application, but merely deferred the furnishing of the particulars until the state, by taking the depositions of the non-resident witnesses, could first ascertain from them the particulars as to facts which are relied upon by the prosecution. As it appears that the state cannot furnish further particulars to the accused until it has first ascertained those particulars by taking those depositions, it was proper for the court to defer the furnishing of the bill of particulars until the state completed taking its testimony by the proposed depositions. *Commonwealth v. Chesapeake & Ohio R. Co.* 128 Ky. 749, 33 Ky. Law Rep. 92, 110 S. W. 253; *Southern R. Co. v. Commonwealth,* 110 S. W. 255, 33 Ky. Law Rep. 252. That course of procedure will allow ample time, after the depositions have been taken, for Drew to prepare for the ultimate trial, without jeopardizing his rights in any respect or subjecting him to any irreparable injury or hardship. Consequently, there exists no such extraordinary state of affairs in relation to the order for the bill of particulars as to warrant the commencement of an original action in this court for a writ of *mandamus,* and leave to do so is denied.

*By the Court.*—Respondent's demurrer to petitioner's complaint in the action for a writ of prohibition is sustained; and the alternative writ of prohibition in that action is quashed.