Ben D. McBRIDE, Appellant,

v.

STATE of Alaska, Appellee.

No. 76.

Supreme Court of Alaska.

Feb. 20, 1962.

George T. Yates, Anchorage, for appellant.

George N. Hayes, Dist. Atty., and Dorothy Awes Haaland, Asst. Dist. Atty., Anchorage, for appellee.

Before NESBETT, C. J., and DIMOND and AREND, JJ.

DIMOND, Justice.

McBride was indicted for burglary and petty larceny. At the first trial, where the jury failed to reach a verdict, the state's principal witness was McBride's stepson, Robert Lee Carr. This witness was not present at the second trial, and over Mc-

Bride's objection the court allowed the jury to hear Carr's former testimony which had been electronically recorded. The jury found McBride guilty of both offenses, and he has appealed. The main question here is whether it was reversible error to permit use of the witness's former testimony.

When the matter came up before the trial judge, McBride objected on three grounds: (1) that he had the right under the state and federal constitutions to be confronted with the witness; (2) that there was no showing that he was responsible for the witness being absent; and (3) that he was entitled to have the witness present in order that the jury could observe his demeanor.

■ The first point is not well taken. It is true, of course, that an accused is entitled "to be confronted with the witnesses against him."[1] But the main and essential purpose of this provision is to secure for the accused the right of cross-examination.[2] McBride had exercised this privilege by cross-examining the witness at the first trial, and a recording of this was heard by the jury at the second trial when the former testimony was introduced by the state. McBride had been "confronted" with the witness who testified against him, and therefore he had enjoyed his constitutional right to cross-examine.

■ McBride's second objection—that the state had not proved he was responsible for the absence of the witness—is also not

well taken. If it had been established that McBride was responsible for the witness's absence, then the court would have been justified in admitting the former testimony on that ground alone. The reason is that the law will not permit one to take advantage of his own wrong.[3] But it does not follow from this that prior testimony is admissible *only* where there is no proof of wrongful procurement. Such testimony may properly be used in circumstances where the accused was in no way responsible for the witness's unavailability.

■ This brings us to McBride's third point, and the crux of the matter: whether he was prejudiced by not having the witness physically present before the second jury. Admittedly, an accused may obtain a considerable advantage from the personal appearance of the witness. The evidence that he gives consists not only of what he says, but also of the manner in which he says it and his deportment while testifying. Thus, what is known as "demeanor evidence" is acknowledged to be highly desirable and an advantage to be insisted upon whenever it can be had[4] and where an accused considers it important.[5] But this type of evidence is merely desirable; it is not indispensable and it may be dispensed with in cases where the witness is unavailable.[6]

What constitutes "unavailability" depends on the facts of each particular case. The courts generally agree, however, that there must be a genuine showing that a witness's presence cannot be secured despite the ex-

1. U.S.Const. amend. VI; Alaska Const. art. I, § 11.

2. 5 Wigmore, Evidence §§ 1395, 1397 (3d ed. 1940); State ex rel. Drew v. Shaughnessy, 212 Wis. 322, 249 N.W. 522, 525, 90 A.L.R. 368 (1933); State ex rel. Gladden v. Lonergan, 201 Ore. 163, 269 P. 2d 491, 496 (1954).

3. Reynolds v. United States, 98 U.S. 145, 158, 25 L.Ed. 244, 247–248 (1879); 5 Wigmore, Evidence § 1405, at 158 (3d ed. 1940).

4. 5 Wigmore, Evidence § 1395, at 125–126, and § 1396 (3d ed. 1940); McCormick, Evidence § 231, at 484 (1954).

5. Demeanor evidence may not always be an advantage to the accused. The manner in which a witness testifies against one may be such as to convince the jury that the witness was telling the truth when he implicated a defendant with a criminal offense.

6. Mattox v. United States, 156 U.S. 237, 243, 15 S.Ct. 337, 39 L.Ed. 409, 411 (1895); Commonwealth v. Gallo, 275 Mass. 320, 175 N.E. 718, 723, 79 A.L.R. 1380, 1387 (1931); 5 Wigmore, Evidence § 1396 (3d ed. 1940); McCormick, Evidence § 231, at 484–485 (1954); 2 Wharton. Criminal Evidence § 476 (12th ed. 1955).

ercise of due diligence.[7] Thus, former testimony has been held inadmissible where there was no "real effort" made to produce the witness[8], or where it appears to the reviewing court that the search for a missing witness was "desultory and indifferent."[9]

In this case the evidence showing unavailability of the witness consisted solely of three affidavits.[10] One was made by the prosecuting attorney and was served and filed four days prior to the trial together with a notice and motion for permission to use the former testimony. The substance of this affidavit was that McBride had called at the place where the witness resided on or about August 7, 1960, that there was a disturbance and the police had to be called, that McBride thereafter telephoned the witness at his residence, that shortly thereafter the witness disappeared and was thereafter listed as a "missing person", and that every effort had been and was being made to locate him.

Two other affidavits were presented on the first day of the trial, shortly before the court gave its favorable ruling on the state's motion to admit the previous testimony.[11] One was by a state police officer who stated that the witness, Robert Lee Carr, had left his home in Fairbanks on August 7, 1960, and that after due and diligent search he had been unable to locate the witness. The other affidavit was made by Galin Robert Insteness on August 12. He stated under oath that he was the legal guardian of the witness Carr who had been residing at the Insteness home in Fairbanks; that on August 6 McBride called at this residence and wished to see Insteness, McBride's estranged wife, Avis, and his stepson, Robert Lee Carr, regarding the testimony that Carr was to give at the forthcoming trial at Anchorage; that Insteness, McBride and the latter's wife met together during the day; that at 12 P.M. on August 6th Carr went to bed; that neither Insteness nor any member of his household saw Carr thereafter; that Carr was reported as a missing person on August 8 to the state police and the state probation officers; that Insteness had not heard from Carr and had not been contacted by him since August 6; and that he did not know where he could be located.

▆▆▆ The question of diligence or lack of it on the part of the state in attempting to find the witness is in the first instance a question of fact for the trial judge to decide, and we shall reverse his decision only if there has been a clear abuse of discretion.[12] A fair inference from the facts stated in the affidavits was that reasonably diligent efforts had been made to locate the witness, and that these efforts had been unsuccessful. McBride did not

7. People v. Blanks, 67 Cal.App.2d 132, 153 P.2d 449, 451 (1944); State v. McClellan, 79 Kan. 11, 98 P. 209, 210 (1908); Callies v. State, 157 Neb. 640, 61 N.W.2d 370, 376 (1953); Golden v. State, 23 Okl. Cr. 243, 214 P. 946, 947 (1923); State v. Carr, 67 S.D. 481, 294 N.W. 174, 175 (1940); State v. Sauls, 97 W.Va. 184, 124 S.E. 670, 673 (1924).

8. State v. Tyler, 187 Kan. 58, 353 P.2d 801, 803 (1960).

9. People v. McDonald, 66 Cal.App.2d 504, 152 P.2d 448, 450 (1944).

10. The second trial took place on August 15 and 16, 1960. A subpoena had been issued on August 11, but it was not returned until August 17 and therefore cannot be considered.

11. These affidavits were not designated for inclusion in the record on appeal—apparently having been overlooked by both parties. Since they are material to the issue being considered, we have exercised our authority to consider them as part of the appellate record. Supreme Ct.R. 9(h). Were we not to do this, we would in effect be rewarding McBride for his oversight or lack of diligence in searching the record. As the appellant, he had the primary obligation of seeing to it that all matters were included which are essential to a decision of the questions presented by the appeal. Supreme Ct.R. 9 (d).

12. People v. Thomas, 164 Cal.App.2d 571, 331 P.2d 82, 84–85 (1958); People v. Cavazos, 25 Cal.2d 198, 153 P.2d 177, 178 (1944); French v. State, 43 Ga.App. 97, 157 S.E. 902, 903 (1931); State v. Budge, 127 Me. 234, 142 A. 857, 861 (1928); State v. Jackson, 30 N.M. 309, 233 P. 49, 54 (1924).

claim that the factual statements were insufficient to show unavailability and diligence on the part of the state. He did not question the veracity of what was said in the affidavits, as he might have done with regard to at least two of them by requesting permission to cross-examine the prosecuting attorney and the police officer, O'Brien, who were present during the trial. These affidavits went solely to one issue: that of the unavailability of the missing witness. On that issue McBride made no protest whatsoever. We cannot charge the trial judge with an abuse of discretion in allowing the former testimony to be heard by the jury, when the critical question of whether there was a genuine showing of unavailability was not brought to the court's attention.[13] When a party objects to action taken by the trial court, he should be specific in stating his grounds for the objection.[14] If he does not, then in the absence of "plain error",[15] he may not raise the point for the first time on appeal.[16]

We find no plain error which would necessitate reversal. We acknowledge that there may be disadvantage to an accused in not having demeanor evidence available for the jury's consideration. The witness's personal appearance is desirable because the jury may well be influenced in judging his credibility by seeing and hearing him in person. They will observe his countenance, his manner, his expressions, his gestures. They will hear his voice and note the manner in which he speaks, and this may be of great weight in determining whether he was telling the truth and knew what he was talking about.

This important demeanor evidence is almost entirely lost to the jury when a witness's previous testimony is read back without expression by a court reporter. But the Alaska courts are unique in retaining a vital portion of such evidence—that which relates to the witness's voice, his audible expressions, his silence. Since its inception in 1960, the Alaska court system has employed electronic recorders to the exclusion of manual reporters.[17] When the second jury listened to the witness Carr's testimony recorded at the first trial, they were given far more than would have been possible from a third person reading a typewritten transcript or a shorthand reporter's notes. The entire direct and cross-examination were played back through a high fidelity loudspeaker mounted on the courtroom wall. The jury was able to hear the inflections of voice which are so often important. They were able to note the readiness and promptness of the witness's answers or the reverse; the distinctness of what he related or lack of it; the directness or evasiveness of his answers; the frankness or equivocation; the responsiveness or reluctance to answer questions; the silences; the explanations; the contradictions; and the apparent intelligence or lack of it [18] These are vital elements touching

13. Cf. Ivey v. State, 24 Wyo. 1, 154 P. 589, 592 (1916).

14. Crim.R. 46 provides in part: "Exceptions to rulings or orders of the court are unnecessary. It is sufficient that a party, at the time the ruling or order of the court is made or sought, makes known to the court the action which he desires the court to take or his objection to the action of the court and the grounds therefor. * * *"

15. Crim.R. 47(b) says: "Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court."

16. Litton v. United States, 177 F.2d 416, 417-418 (8th Cir. 1949); On Lee v. United States. 343 U.S. 747, 749 & n.

3, 72 S.Ct. 967, 96 L.Ed. 1270, 1271, 1273-1274 (1952); Thayer v. United States, 168 F.2d 247, 249 (10th Cir. 1948); 1 Wigmore, Evidence § 18, at 332 (3d ed. 1940).

17. For a more complete account of the installation, use and advantages of this type of recording see Olney, Report on Electronic Sound Recording in the Trial Courts of the State of Alaska, 107 Cong. Rec. 2218 (daily ed. Feb. 20, 1961); Nesbett, Electronic Recording of Court Proceedings in Alaska, 7 Prac.Law. 59 (Nov. 1961); but see, Rodebaugh, Sound Recording in the Courtroom: A Reappraisal, 47 A.B.A.J. 1185 (Dec. 1961).

18. 5 Wigmore, Evidence § 1395, at 126 (3d ed. 1940).

upon the witness's veracity which are available in this jurisdiction to be noted and weighed by a jury even when the witness is not present in person. To a large extent, then, demeanor evidence is available for a subsequent jury; it is no longer wholly "elusive and incommunicable" [19] as in the case of manual reporting of former testimony.

The next questions presented for review have to do with the indictment. It contained the name "Robert L. McBride" as one of the witnesses examined before the grand jury.

■ First of all, McBride claims that the court erred in permitting the state, at the time set for trial, to change the name of this witness to his true name Robert L. Carr. The record, however, does not show that such an amendment was made. We shall not review a question that depends for its existence on alleged facts that the record does not support.

■ Secondly, McBride claims the court was obliged to dismiss the indictment, since it did not show the true name of the witness; and that it erred in refusing to take that action. McBride raised that point in his motion to dismiss the indictment filed July 29, 1960, which was prior to the first trial. But the record does not reveal whether the motion was acted upon by the trial court. The record also fails to show that the motion was renewed or again brought to the court's attention at the second trial. We consider this a waiver of the point and decline to review it.

McBride's final assignment of error is that the evidence was insufficient to sustain a conviction, and that the court erred in refusing to grant his motion for judgment of acquittal. We have reviewed the entire record and find that the state's evidence, although circumstantial in nature, justifies with reason the jury's conclusion that McBride was guilty of the offenses with which he was charged.

The judgment is affirmed.