MENZL, d/b/a MENZL'S TOWING SERVICE, Appellant, v. CITY OF MILWAUKEE and another, Respondents.

*September 12—October 4, 1966.*

268

For the appellant there was a brief by *Murphy, Shapiro & Gorsky,* attorneys, and *Carl L. Dubin* of counsel, all of Milwaukee, and oral argument by *Mr. Dubin.*

For the respondents there was a brief by *John J. Fleming,* city attorney, and *Carl F. Kinnel,* assistant city attorney, and oral argument by *Mr. Kinnel.*

HEFFERNAN, J. The city contends that the cost of the contract chargeable to city funds is less than $1,000, and, hence, by its terms, the bid ordinance, sec. 7.29, is not mandatorily applicable.

If the contract in question is not subject to the provisions of the bid section, the city is not bound by that type of procedure and even, after determining to invite bids, may reject any or all bids and ask for new bids, or may contract on the basis of reasonable business judgment with one who is not the low bidder. *Cullen v. Rock County* (1943), 244 Wis. 237, 240, 12 N. W. (2d) 38, 10 McQuillin, Mun. Corp. (3d ed.), pp. 272–274, sec. 29.31.

If, on the other hand, the towing contract can be let only pursuant to bid procedure, it is necessary to determine whether the commissioner has the discretion to award the contract to other than the low bidder—bearing in mind that Menzl was the higher of the two bidders.

*Was bid procedure prescribed by
Sec. 7.29 mandatory?*

Sec. 7.29, Milwaukee city charter, insofar as it is pertinent to this case provides:

"All work and the purchase of all materials, supplies, and equipment, chargeable to any city fund, when the cost thereof shall exceed the sum of $1,000.00, except street cleaning, shall be let by contract, to the lowest bidder in the manner provided by Sections 7.23, 7.24 and 7.26 of the Milwaukee City Charter, 1934 compilation . . . ."

Appellant claims that in determining the amount of the contract the entire cost of the related governmental functions must be considered; in this case, all payroll and administrative expenses of the police department devoted to locating and investigating matters pertaining to abandoned, wrecked, disabled, stolen, or police-evidence vehicles, a sum clearly in excess of $1,000. We consider this argument devoid of merit. Only such costs that the city must pay for the performance of the contract should be considered and not the administrative cost of a function of the city. The bid statute is pertinent only to work not done by the city's own employees.

Menzl also contends that, since the gross proceeds of the sale of abandoned cars concededly amounts to more than $1,000, the contract is within the purview of sec. 7.29. We conclude, however, that the city attorney correctly points out that the dollar limit referred to in the ordinance must be chargeable to "city funds." The method of paying the tower is outlined in sec. 7.46 of the charter and is set forth in greater detail in the specifications that are of record. It appears that the towing contractor has first claim upon the proceeds after the payment of the cost of the sale. It is only *after* payment to the contractor that the balance is deposited with the city treasurer and paid to the general city fund. By the terms of the specifications and sec. 7.46, the contractor

is given a vested right to a share of the proceeds equal to the contractual price of his services. In *Pembar, Inc., v. Knapp* (1961), 14 Wis. (2d) 527, 534, 111 N. W. (2d) 476, we held that separate museum funds were not city funds since they were not under control of the common council. We deem the same principle applicable here. The sum paid to the towing contractor upon the sale of abandoned or junked automobiles prior to deposit with the treasurer is not "chargeable to any city fund."

Appellant points out, however, that the city concedes that approximately $700 a year will be chargeable to a city fund for the towing of police-evidence vehicles and that, since this is a three-year contract, the cost is estimated to be $2,100, well in excess of the $1,000 proviso of sec. 7.29. The respondent city contends that the contract cannot be considered a three-year contract because the commissioner of public works is restricted in his authority to contract for the doing of any work in any one year to the sum appropriated for such work. In this case it appears that $700 has been appropriated for 1966. The city relies on sec. 7.27 of the Milwaukee city charter, which provides:

"**Contracts not to exceed appropriations.** 7.27 The said commissioner of public works shall have no power, by contract or otherwise, to exceed in the doing of any work, in any one year, the sum appropriated for such work by the said common council, or by law, for such year."

This section is not relevant to the purposes of sec. 7.29. Sec. 7.27 merely means that the commissioner of public works cannot in a single year subject the city to liability by contract that is in excess of the funds appropriated for a particular purpose in that year.

The basic ordinance that we must consider is sec. 7.29, which provides that contracts shall be let by bid "when the *cost* thereof shall exceed the sum of $1000.00." (Emphasis supplied.) Respondent, in effect, contends that sec. 7.29 should be read, "when the *presently appropri-*

*ated* cost thereof" shall exceed the sum of $1,000. If such an interpretation, contrary to the plain meaning of the words used, were intended, it would have been easy enough for the authors of the charter ordinance to have said so. The expressly stated criterion for triggering the effect of sec. 7.29 is the "cost" of the contract and not the amount of the appropriation. We consider that sec. 7.27 is merely declaratory of one facet of the common-law rule that one who deals with a municipality does so at his own risk and may be subject to any provisions of law that might prevent him from being paid by a municipality even though the services are rendered.

Respondent's interpretion is contrary to the purpose of the bid statute and the generally accepted rule as stated in 10 McQuillin, Mun. Corp. (3d ed.), p. 280, sec. 29.33:

"And where a municipality is prohibited from letting contracts involving an expenditure of more than a specified sum without submitting the same to competitive bidding, it cannot divide the work and let it under several contracts, the amount for each falling below the amount required for competitive bidding."

It seems to be the position of the respondent that, although there is a master agreement that binds the bidder for a three-year period, a contract as defined in sec. 7.29 comes into fruition only as money is appropriated annually. Such interpretation would render sec. 7.29 substantially ineffective. It could readily be evaded either by dividing the work into a series of small contracts or, as the city attempts to do here, withholding the council's formal act of appropriation until after the contract is entered into on a noncompetitive basis.

There is no intimation in respondent's argument that the city does not intend to pay the obligations under the contract as they accrue, and the evidence of record shows that the cost in the aggregate will exceed $1,000.

We conclude that the contract is one in which the cost chargeable to any city fund exceeds $1,000 and must be

let only by the bid procedure specified in sec. 7.29 of the city charter and in the "manner provided by Section[s] 7.23."

*Will mandamus lie in this case?*

It is clear that the trial judge arrived at the decision to deny mandamus through an error of law. In his memorandum opinion he stated:

"A mandamus will lie, of course, when there is clear and satisfactory evidence that the Commissioner refused or failed to do that which he is required to do by law. His duty to act should be plain and clear either as an abuse of discretion or to perform a given act which it is his legal duty to perform.

"For the reasons previously stated by the court, namely, that the particular contracts which, in the opinion of this court, have not been shown to fall within the competitive bid provisions of the charter, statute and ordinance, no specific legal duty has been demonstrated to the satisfaction of the court by the proof required, and the . . . mandamus must be denied."

However, our decision that the towing contract must be let only by bid procedures does not *ipso facto* determine that mandamus will lie. Mandamus is a discretionary writ. We said in *State ex rel. Sullivan v. Hauerwas* (1949), 254 Wis. 336, 340, 36 N. W. (2d) 427:

"Mandamus is a summary, drastic, and extraordinary writ issued in the sound discretion of the court. Although classed as a legal remedy, mandamus is equitable in its nature and its issuance is generally controlled by equitable principles. The rights of the public and of third persons may be considered."

"The [trial] court has discretion as to the issuing of a writ of *mandamus* directed to a public officer. The order of the court will not be reversed except for abuse of such discretion." *State ex rel. New Strand Theatre Co. v. Common Council* (1930), 201 Wis. 423, 425, 230 N. W. 60.

Moreover, it is an abuse of discretion for a court to compel action through mandamus when the officer's duty is not clear and unequivocal and requires the exercise of the officer's discretion. *Wisconsin Pharmaceutical Asso. v. Lee* (1953), 264 Wis. 325, 58 N. W. (2d) 700; *State ex rel. Drew v. Shaughnessy* (1933), 212 Wis. 322, 249 N. W. 522, Anno. 90 A. L. R. 368; *State ex rel. Adams County State Bank v. Kurth* (1939), 233 Wis. 60, 288 N. W. 810. But it is equally well settled that a writ of mandamus will issue to enforce the performance of plain imperative duties of a ministerial character imposed on executive agencies. *State ex rel. West Allis v. Zawerschnik* (1957), 275 Wis. 204, 207, 81 N. W. (2d) 542; *State ex rel. Krause v. Jones* (1928), 196 Wis. 464, 220 N. W. 373. Furthermore, it is the proper remedy to compel public officers to perform their clearly prescribed statutory duty. *State ex rel. Martin v. Zimmerman* (1939), 233 Wis. 16, 288 N. W. 454; *State ex rel. Ingold v. Mayor* (1919), 170 Wis. 133, 174 N. W. 471.

The extent to which these principles apply to compel the awarding of contracts depends largely upon the statutory powers and duties of the contracting officer or agency. The general charter law, ch. 62, Stats., that authorizes the award of contracts to the lowest *responsible* bidder (sec. 62.15 (1)) and specifically granting authority to the city to reject all bids (sec. 62.15 (5)), grants a wide discretion to bid letters operating under this statute. It is difficult to conceive of a situation arising under that statute where mandamus would lie. The city of Milwaukee, however, operates under its own charter ordinance, and the Milwaukee charter does not contain those phrases in regard to "responsible" bidders or "the right to reject all bids" that grant such wide discretion to city officers operating under the general charter.

McQuillin's statement makes it clear that to determine whether mandamus will lie it is necessary to examine the breadth of the officer's discretion.

"Whether the duty of a public officer who is required to let a contract to the lowest bidder involves the exercise of discretion is a question upon which the authorities are not in harmony. Some courts hold the duty is ministerial and enforceable by mandamus, even after the contract has been awarded to another bidder who has proceeded to perform the work. *However, the prevailing view seems to be that mandamus does not lie for such purpose, especially where discretion is to be exercised or discrimination is permitted by the officials in awarding the contract.*" (Emphasis supplied.) 17 McQuillin, Mun. Corp. (3d ed.), pp. 561, 562, sec. 51.52.

In *State ex rel. Phelan v. Board of Education* (1869), 24 Wis. 683, 684, this court affirmed the trial court's denial of the writ, stating that the writ was discretionary, that the bid statutes were enacted primarily for the benefit of the public, and not of the bidders. Significantly, the court pointed out:

". . . the lowest bidder, whose bid has been rejected, has no absolute right to a writ compelling the execution of a contract with him, *after one has in fact been let to another*. The writ of mandamus being a discretionary writ, the fact that the contract has actually been awarded to another is sufficient to induce the courts to decline to interfere to further complicate the matter, *even though they might otherwise have done so.*" (Emphasis supplied.)

In a more recent case, *State ex rel. Hron Brothers Co. v. Port Washington* (1953), 265 Wis. 507, 509, 62 N. W. (2d) 1, this court denied the writ of certiorari to compel the award of a contract, quoted *Phelan, supra,* with approval, and stated:

"Like mandamus, certiorari is a discretionary writ . . . . . The petition itself shows that the contract has

been awarded to another and we cannot consider it an abuse of discretion when the trial court refrained from further complicating the matter."

In the instant case we do not have the complicating factor of an award to another bidder. Moreover, in *Hron, supra,* page 510, as in *Mueller v. Eau Claire County* (1900), 108 Wis. 304, 84 N. W. 430, the "authority conferred was to let the contract to the lowest *responsible* bidder." The court there stated, ". . . courts very properly hold that the power thus conferred implies the exercise of discretion which will not be interfered with by the courts."

The extent of discretion vested in the commissioner of public works of the city of Milwaukee is spelled out in detail in sec. 7.23 of the Milwaukee city charter:

". . . whenever the lowest bid for any work to be let by said commissioner, shall appear to said commissioner to be unreasonably high, the said commissioner is authorized to reject all bids therefor, and to re-let the work anew, and whenever any bidder shall be, in the judgment of said commissioner, incompetent, or otherwise unreliable for the performance of the work for which he bids, the said commissioner shall report to the common council of said city a schedule of all the bids for such work, with a recommendation to accept the bid of the lowest competent and reliable bidder for such work, with its reasons for such recommendation, and thereupon it shall be lawful for the said common council to direct said commissioner either to let the work to such lowest competent and reliable bidder, or to re-let the same anew. And provided, further, that the said commissioner may reject the bid of any person who shall previously have wilfully or negligently failed to complete any work or contract entered into by him with the city, or any officer or department thereof, or who shall have wilfully or negligently failed to enter into a contract with satisfactory sureties, for any work or improvement that shall have been previously awarded to him by said commissioner, and the failure to let such contract to the lowest bidder, in compliance with any provision of this section, shall not invalidate such contract, or any special assessment thereunder, or for the work done in virtue thereof."

That discretion is limited. He may reject all bids when he concludes that even the lowest of them is unreasonably high. Only after such a determination by the commissioner may he *sua sponte* reject all bids. No such determination was made by the commissioner in this case. In fact, there was testimony by a member of the commissioner's staff that Menzl's bid, the higher of the two, was not unreasonable. The commissioner had no authority to reject the bids and to advertise anew.

One additional grant of discretion relevant to this case is given to the commissioner by the ordinance. If he concludes that the lowest bidder is incompetent or unreliable, he may notify the council of that conclusion and recommend that the work be let to the lowest *competent* bidder. It is then up to the *council* to determine what course shall be followed, and the council may authorize the award to the lowest competent and reliable bidder or may order that the contract be let anew.

In *Neacy v. Milwaukee* (1920), 171 Wis. 311, 320, 176 N. W. 871, in considering this very ordinance, we said:

> "We have been referred to no provision of the city charter conferring authority upon the commissioner to reject all bids under such circumstances. His power is to rejects bids only when the lowest bid is unreasonably high in his judgment."

Similar language pointing out the severe limitations upon the commissioner's (then the board's) discretion, under a similar, if not identical, charter ordinance, was used in *Ricketson v. Milwaukee* (1900), 105 Wis. 591, 604, 81 N. W. 864. The court also stated that:

> "It was to avoid giving them any chance for the exercise of discretion . . . that the charter required definite plans and specifications, and a letting to the lowest competent and reliable bidder. The letting must be to the lowest bidder, under the charter, unless the board shall find his bid to be unreasonably high . . . ." (Et cetera, listing the same exceptions that appear in the present charter ordinance.)

The commissioner of public works of Milwaukee does not have the broad discretion that is vested in similar officers in operating under the general charter law. His functions in the granting of municipal contracts under secs. 7.29 and 7.23 are ministerial except for the limited discretion specifically granted. If he seeks to exercise authority beyond the discretion delegated, he is subject to mandamus. He is obligated to award the contract to the lowest bidder unless (1) that low bid is too high and he exercises his authority to reject all bids, or (2) the council concurs in his recommendation and authorizes him to contract with the lowest *competent* bidder. If the low bidder is not unreasonably high and if the commissioner does not find him incompetent or otherwise unreliable, the duty that remains to the commissioner is purely ministerial and his failure to award the contract will subject him to mandamus unless other factors properly influence the *court's* exercise of discretion.

However, we must conclude on the basis of this record that Menzl is not entitled to a writ of mandamus at this juncture. He is not the low bidder. Superior Auto Body is the low bidder. Superior's bid price for towing was $7.90 and Menzl's was $10. In other respects their bids were identical. For Menzl to prevail, Superior Auto Body must be eliminated as a competitor for the bid. It is apparent from the foregoing discussion that the commissioner, being bound by the provisions of secs. 7.23 and 7.29, did not effectively reject the bids. The case, on the basis of this record, is presently in the same posture as it was before the commissioner's nugatory rejection. Superior is the low bidder but has not yet been able to qualify. We conclude, in the absence of applicable prequalification procedures of bidders, that a low bidder should have a reasonable time to qualify. It now behooves the commissioner to ascertain whether Superior now qualifies or can qualify within a reasonable time or whether

it has failed to qualify in a reasonable time. If Superior is found to qualify within a reasonable time, Superior must be awarded the contract; or, in the event that the commissioner determines that Superior has not qualified within a reasonable time or is incompetent or otherwise unreliable, the commissioner may notify the council of that fact and receive authorization to award the contract to Menzl, the next lowest bidder, unless the council thereupon determines to reopen the bidding. In the event the commissioner determines that all bids are unreasonably high,[1] he may reject both bids and advertise for bids anew.

*By the Court.*—The judgment of the circuit court, as modified, is affirmed, and the cause is remanded to the circuit court, the circuit court to retain jurisdiction pending the commissioner's exercise of his discretion under the charter of the city of Milwaukee in a manner not inconsistent with this opinion. Costs are assessed against the respondent.

---

[1] We note that at least one witness representing the commissioner in circuit court testified that neither of the bids was unreasonably high. However, we do not consider that this testimony should bind the commissioner in a formal determination in regard to the reasonableness of the bids.