MORRISSETTE and others, Appellants, v. DEZONIA and others, Members of the School Board of Joint School District No. 8, Respondents.

*No. 23. Argued April 1, 1974.—Decided May 7, 1974.*
(Also reported in 217 N. W. 2d 377.)

430

For the appellants there was a brief by *Jonathan D. Jackson, Jr.*, attorney, and *John J. Heim,* guardian *ad litem* for appellant minors, both of Madison, and oral argument by *Mr. Jackson.*

For the respondents there was a brief by *Edwin Conrad,* Madison city attorney, and *Gerald C. Kops,* assistant city attorney of Madison, and oral argument by *Mr. Kops.*

WILKIE, J. The preliminary issue here is whether mandamus is a proper remedy in this case.

A writ of mandamus lies to compel public officers to perform their prescribed statutory duties. [1]

". . . Mandamus, however, is an extraordinary remedy and will not lie if there is another adequate and specific remedy at law (*Underwood v. Karns* (1963), 21 Wis. 2d 175, 124 N. W. 2d 116), or if the act lies entirely within the discretion of the officer." [2]

And it has been held to be an abuse of discretion for a court to compel action through mandamus when the duty is not clear and unequivocal and requires the exercise of discretion. [3]

Aside from its decision on the merits, the trial court felt that the petitioners had failed to show a clear and specific duty on the part of the school board in this case. The court apparently felt that the ambiguity created by considering the effect of sec. 120.41, Stats., on sec. 121.54 would in any event prevent the issuance of a writ of mandamus. The trial court said in its decision:

[1] *State ex rel. Martin v. Zimmerman* (1939), 233 Wis. 16, 288 N. W. 454.

[2] *State ex rel. Kurkierewicz v. Cannon* (1969), 42 Wis. 2d 368, 376, 166 N. W. 2d 255.

[3] *Menzl v. Milwaukee* (1966), 32 Wis. 2d 266, 276, 145 N. W. 2d 198.

"Even if this court did not entirely agree with the functional annexation theory, the foregoing points out that the duty alleged by the petitioners to be specific, precise and clear is in fact ambiguous, and at least doubtful, so that the writ of mandamus will not lie."

The trial court here misunderstands the necessity for a clear and unequivocal duty before mandamus will lie to compel performance of that duty. The court apparently felt that if construction and statutory interpretation were necessary to determine whether a mandatory duty existed under the facts, then mandamus would not lie even after such interpretation revealed the nature of the action sought to be compelled. In this particular case sec. 121.54, Stats., sets up a clear and unambiguous duty to provide transportation to and from public school for all pupils who reside in the school district two miles or more from the nearest public school they are entitled to attend.[4] There is an equally clear exception to this duty and that is that it does not apply to those pupils who reside in cities unless the school they attend is located outside the city but within the boundaries of the school district.[5] The school board argued that the children of the petitioners in this case reside "in cities" within the meaning of sec. 121.54 (1), by virtue of sec. 120.41 (1).[6] Thus, once it is determined whether in fact the petitioners' children reside "in cities" it will be clear whether or not there exists a mandatory duty on the school board to provide them with transportation to and from public

---

[4] Sec. 121.54 (2) (a), Stats.

[5] Sec. 121.54 (1), Stats.

[6] Sec. 120.41, Stats. "General provisions. (1) General school law governs the schools of a city school district, insofar as applicable and in harmony with this subchapter. Every city operating a school system under this subchapter is a single and separate school district, but the school system does not constitute a separate legal entity. Territory outside a city which is joined with city territory in the formation of a city school district is attached to the city for school purposes and such a school district constitutes a joint city school district."

school. Because one has to resolve apparently conflicting statutory provisions to arrive at the nature of the duty sought to be compelled by mandamus does not mean that mandamus will not lie once that determination is made.

In *State ex rel. Kurkierewicz v. Cannon*[7] this court also said that:

"... A writ of mandamus is a discretionary writ in that it lies within the sound discretion of the trial judge either to grant or deny it. Hence, the action of a trial judge in either granting or denying the writ will be affirmed unless the trial judge abused his discretion."

The court in *Kurkierewicz* went on to say that if mandamus is not a proper remedy to compel certain action a writ of mandamus so directing would be an abuse of discretion. As a corollary it follows that if a trial judge erroneously concludes that mandamus is not a proper remedy when in fact it is, that also constitutes an abuse of discretion. Thus, we must determine whether the trial judge correctly determined that there was no absolute duty imposed by law on the school board in this case to provide transportation at public expense for the children of petitioners and those similarly situated. This leads us to the consideration of the crucial issue on this appeal:

Does the School Board of the City of Madison Joint School District No. 8 have a duty under sec. 121.54, Stats., to transport to and from school public school students who reside outside the city of Madison but within the school district and who also reside in excess of two miles from the nearest school they are entitled to attend?

*Duty of transportation.*

In correctly identifying the main issue in this case, the trial court stated:

---

[7] *Supra,* footnote 2, at pages 375, 376.

"The issue of this case is whether there is an absolute duty imposed by law so that a Writ of Mandamus will lie, ordering the Board of Education to provide school bus transportation to the town of Fitchburg residents. . . .

" . . .

"Therefore, whether the writ of mandamus will lie, is principally dependent upon the nature of the residence of pupils who reside in territory attached to the city of Madison for school purposes."

In resolving this issue the trial court simply misconstrued *Cartwright v. Sharpe*,[8] this court's recent decision on this very subject. In that case the School Board of Joint District No. 1, in the city of Fond du Lac, appealed to this court from the granting of a peremptory writ of mandamus ordering them to furnish transportation to students living in Fond du Lac and attending parochial schools outside the city of Fond du Lac and more than two miles from their residences. This court reversed the lower court decision and found that the writ of mandamus should have been quashed.

The court was dealing with the statute as it was worded in 1967; however, those sections with which we are concerned have not been substantially changed since that time. This court found that:

"From a literal reading of these statutes (set forth above), there is no question from language which is plain and unambiguous that the 'over two mile' provision for mandatory transportation does not 'apply to pupils who reside in cities' except where the school board 'determines' to provide such transportation." [9]

The court further discussed the classification scheme as follows:

"The statutory sections are not ambiguous. They clearly create four major classifications in every school district: those who live more than two miles from school; those who reside in cities; those who do not; and those

[8] (1968), 40 Wis. 2d 494, 162 N. W. 2d 5.
[9] *Id.* at pages 504, 505.

who reside in the district but not in cities and attend schools which are located not more than five miles outside the district. The petitioner would have the court create a fifth classification, namely—students who reside in the city but attend school outside the city. To do so would require the court to impose an exception upon a legislative exception. The statutes clearly state that transportation shall be provided for those who live more than two miles from their school except those who reside in cities. . . ." [10]

However, in speaking of the plain and unambiguous language of sec. 121.54, Stats. 1967, this court was not presented with the question of the effect of sec. 120.41 on the meaning of the words "reside in cities" as used in sec. 121.54. An ambiguity can be created by the interaction of two separate statutes as well as by the interaction of the various words and the structure of the statute itself.

The legislature responded to this decision and by ch. 213 of the Laws of 1969 added the classification contended for by the petitioners in the *Cartwright Case.* Sec. 121.54 (1), Stats., now reads that mandatory transportation provisions do not *"apply to pupils who reside in cities unless the school they attend is located outside the city but within the boundaries of the school district."* (Emphasis added.)

In the *Cartwright v. Sharpe Case* the school board was in fact providing transportation for children in the same situation as the children of petitioners in the present case. The school board in *Cartwright* had at first proposed to furnish transportation to all students in the city who lived more than two miles from school but a budget cut eliminated the necessary funds for such an undertaking. As a result there was no transportation for those living in the city and more than two miles from school, but transportation was provided for those living outside the

---

[10] *Id.* at page 507.

city and more than two miles from school, whether public or parochial. This was a joint city school district just as is the district in the present case. The school board in *Cartwright,* however, interpreted its duty of transportion of district pupils in a different manner than the School Board of Madison Joint District No. 8, Dane County.

The school board in the present case feels that by virtue of the provisions of sec. 120.41 (1), Stats., it has no mandatory duty to provide transportation to any pupils within the district. The school board argues that all pupils within the district are "city residents" by the provisions of sec. 120.41 (1), and therefore any duty to transport them is made discretionary by sec. 121.54 (1). The trial court agreed with this contention of the school board.

"A reasonable interpretation of the aforementioned statutes [secs. 120.41, 120.43, 120.45] leads this court to the opinion that where territory is attached to the city for school purposes, a functional annexation occurs. The families who reside in the attached territory become residents of the city of Madison for school purposes."

Sec. 120.41 (1), Stats., provides that territory outside a city which is joined with city territory in the formation of a city school district is attached to the city for school purposes. The section also provides that a city school system, although a single and separate school district, is not a separate legal entity. In *State ex rel. Board of Education v. Racine* [11] this court explained that the legislative purpose of statutes relating to city school districts was that "school affairs shall constitute a municipal function in cities and that the board of education is merely a city agency the same as the board of public works."

[11] (1931), 205 Wis. 389, 395, 236 N. W. 553.

Ch. 120 of the Wisconsin Statutes deals with school district government. Subch. II deals specifically with city school districts. The sections which follow specify the methods of electing school board members, the method of taxation of property, etc. Several sections deal with the taxation of property and the election of school board members in attached territory. Since a city school district is an agency of city government and not a separate legal entity it was certainly appropriate for the legislature to carefully provide that taxes could be levied on such property and that residents of such territory had the same voting privileges as all other city school district residents. Otherwise there might have been serious questions of the jurisdiction of a city agency with respect to noncity territory attached for school purposes. The provisions of subch. II of ch. 120 provide that city school districts even when they contain territory outside the city shall function administratively as single units with equality of privileges and responsibilities among all school district residents.

But the fact that sec. 120.41 (1), Stats., uses the words "attached to the city for school purposes" does not mean that no distinction can ever be made between city and noncity territory within a joint city school district. In fact, the first sentence of the statute provides that: "General school law governs the schools of a city school district, insofar as applicable and in harmony with this subchapter." Subch. II of ch. 121, dealing with transportation, is part of such general school laws. The specific provisions of sec. 121.54 are not out of harmony with or inapplicable to joint city school districts. The clear language of sec. 121.54 (2) says that "every school board shall provide transportation." The distinctions created in sec. 121.54 are not out of harmony with the provisions of subch. II of ch. 120 any more than they are out of harmony with the governmental structure of other school

districts made up of the territory of several municipalities.

Sub. (1) of sec. 121.54, Stats., is entitled "City Option." Within the body of the first subsection the legislature has provided that common or union high school districts, city school districts, or unified school districts may determine to provide transportation to children residing in cities. It is clear from this enumeration that the "city option" applies to all districts containing city territory and that the word "city" is not synonymous with "joint city school district."

As noted earlier, the case of *Cartwright v. Sharpe* involved a joint city school district. The school board there was providing transportation for pupils who resided beyond city limits. The petitioners in that case wanted transportation provided for their children who resided in the city of Fond du Lac but attended parochial school outside the city. This court found that the statute did not make such transportation mandatory. In response the legislature added an exception to sec. 121.54 (1), Stats., providing that transportation was mandatory for pupils residing in cities but who attended schools outside the city but within the school district. Since the legislature was giving attention to this statute it would have been easy to clarify the statute to say that sub. (2) did not apply to pupils residing in cities or territory attached to cities for school purposes. If the amendment of 1969 was intended to solve the problem raised in the *Cartwright Case*, the interpretation of "reside in cities" urged by the Madison school board would make the amendment completely ineffectual as a response to the fact situation of the *Cartwright Case*. If the Madison school board is correct, the school board of the city of Fond du Lac did not have to provide transportation to any of its pupils either. The amendment would have no effect because the city limits would be coextensive with the school district

limits and therefore there would be no schools outside the city and within the boundaries of the school district. The legislature clearly intended this amendment of 1969 to be a direct response to the *Cartwright Case* in which the court specifically declared that the relief sought by the petitioners in that case must come from the legislature.

The purpose of school transportation laws is to provide for the safety and welfare of school children. Sec. 121.54, Stats., should be given a liberal interpretation to accomplish this laudable purpose. Therefore, any exceptions to the mandatory provision of transportation should be narrowly construed. Thus, the exception for children who "reside in cities" should be confined to its common and approved usage and "city residence" should not be held to include constructive city residence due to residing in noncity territory joined to a city school district to form a joint city school district.

### *Constitutionality.*

The trial court also gave as a reason for adopting the position of the respondent school board that any other construction of the statutory language would raise constitutional questions. Thus, in its decision, the trial court stated:

"If the court did not subscribe [to] the functional annexation theory, constitutional equal protection problems would exist. There are town islands in the district surrounded by the city. To grant school bus transportation to a pupil who lives on one side of a street which happens to lie, for example, in the town of Burke, while not providing transportation to a pupil who might live across the street in the city of Madison, might very well be a denial of equal protection under the laws."

The trial court did not actually hold that absent the construction it gave the statute, sec. 121.54, Stats., would be unconstitutional.

The petitioners argue on this appeal that sec. 121.54, Stats., is constitutional.

In *Cartwright v. Sharpe* [12] this court upheld the legislative determination that only those pupils who live two miles or more from their homes shall be entitled to mandatory transportation as a reasonable classification. The court also discussed the classification of city versus noncity residence as the second basis for determining when transportation is mandatory. Although the court recognized that all modes of travel, within and without a city, present some hazards, we concluded that the classification was also reasonable. That decision is precedent for a similar holding here.

*By the Court.*—Order and judgment reversed and cause remanded for further proceedings.