L. G. ARNOLD, INC., Appellant, vs. CITY OF HUDSON, Respondent.

*March 7—April 3, 1934.*

6

For the appellant there was a brief by *Farr & MacLeod* of Eau Claire, and oral argument by *Arthur W. MacLeod*.

For the respondent the cause was submitted on the brief of *William B. Webster,* attorney, and *Spencer Haven* of counsel, both of Hudson.

NELSON, J. The plaintiff contends that the judgment is not supported by the findings of fact. The court in substance found that prior to 1930 the city of Hudson had acquired for highway purposes a strip of land one hundred feet wide which was thereafter improved and which served as an approach to a bridge spanning the St. Croix river. This street or dyke was maintained by the city of Hudson, although at first the city had no financial interest in the bridge itself. Prior to 1916 or 1918 the bridge was maintained by a private company which collected toll for the use thereof. Along about 1916 or 1918 the city acquired title to the bridge and has since maintained it as a toll-bridge. In 1930 the common council of the city determined to concrete the street or dyke mentioned and duly advertised such proposed work for bids. On September 29, 1930, the plaintiff submitted a bid for the proposed work which, so far as material, is as follows:

"We hereby propose to build the pavement and curb on the St. Croix causeway for the following unit price: Pavement including grading $2.25 a square yard; curb 50c a lineal foot. Will begin the work immediately and complete the same in the shortest possible working time."

The city accepted the bid. Specifications for the work had been prepared and were on file in the office of the city clerk. A copy of the contract to be formally entered into was also on file in the office of the city clerk. That

contract provided that it was understood and agreed "that the sand and gravel for the concrete work shall be obtained from Lakeland, Minnesota," a gravel pit located on the Minnesota side of the river not far from the bridge. The plan of the city engineer was to commence work at the end of the dyke farthest away from the bridge,—that is, the east end,—and contemplated that the gravel and sand could be hauled across the bridge from Lakeland. Some days after the plaintiff's bid was accepted the city concluded that sand and gravel could not be hauled across the bridge because it was to be repaired and it therefore changed the contract to read "Wissota Sand and Gravel Company, Chippewa Falls, Wisc." instead of "Lakeland, Minnesota." The gravel pit mentioned was located at or near to Chippewa Falls, a distance of some seventy-five miles from the bridge. After this change was made in the contract it was sent to the plaintiff at Eau Claire to be executed by it. While the formal contract was being prepared the plaintiff proceeded with the work. Plaintiff retained the contract for a few days while a required bond was being executed by a surety company, and then signed the contract and mailed it to the mayor at Hudson, together with a letter which, among other things, contained the following language:

"We are inclosing herewith the contract for the paving of the east approach to the St. Croix river bridge, Hudson, Wisconsin. On the evening on which I submitted my proposal for this work it was the opinion of your engineer and the writer (the president and manager of the plaintiff company) that material was to be trucked from Lakeland, Minnesota. It was also understood that we would set up a plant on the west side of the bridge and truck out materials from the mixer to the slab as it was laid on the east approach. In accordance with the request of your Mr. Redmond and Mr. McGiveran we consented not to haul any material across the bridge and build everything from the Hudson side of the river. Previous to this time we

arranged to ship equipment and cement to Lakeland. The increased cost of building the job from the Hudson side is enumerated as follows:" (giving a list of figures; the total difference as figured by the plaintiff in the cost of taking the gravel from Chippewa Falls was given as $1,170). Then the letter concludes: "Under the circumstances we do not feel that we should be asked to pay this increased cost especially after the writer made you such a low figure on doing this job. We feel that we are entitled to the increased cost and submit this letter to you asking that you have the same verified by your engineer. We are going on with the work and have signed the contract with the expectation that we will be reimbursed for the increased cost."

The contract, bond, and letter were received by the mayor of the city, but no action with respect to the plaintiff's letter was ever taken by the council. The plaintiff completed the work in accordance with the contract, obtaining the sand and gravel from the Wissota Sand and Gravel Company at Chippewa Falls, at an increased expense to it of $1,310.47. Upon the completion of the work the plaintiff made claim for the extra expense to which it had been put, but the city refused to pay any part of the same. The court concluded that the plaintiff, by signing the contract as changed by the city, assented to it; that the letter, although expressing the desire of the plaintiff to be reimbursed for the extra cost of obtaining the sand and gravel at Chippewa Falls, did not amount to an absolute condition upon which the contract was signed by the plaintiff; that since the city of Hudson did not act upon the suggestion or proposal made in the letter accompanying the contract, it is not liable for the amount of the difference in cost due to the change of place of securing the sand and gravel, and that the city is not estopped in fact or in law from insisting upon the terms of the contract as signed.

It is clear that the city had authority to enter into a contract for the improvement of the street in question, and to require that the sand and gravel be procured from the

Wissota Sand and Gravel Company at Chippewa Falls. The specifications and the proposed contract, however, provided "that sand and gravel for the concrete work shall be obtained from Lakeland, Minnesota," not far from the bridge. Upon such specifications and proposed contract the plaintiff made its bid, which was accepted by the city. The acceptance of plaintiff's bid by the city constituted a contract, although it was understood that a formal contract was to be executed, accompanied by a surety bond. *Garfielde v. United States,* 3 Otto (93 U. S.), 242; *Harvey v. United States,* 15 Otto (105 U. S.), 671; *United States v. Purcell Envelope Co.* 249 U. S. 313, 39 Sup. Ct. 300. It is clear, under the authorities cited, that when the plaintiff's bid was accepted by the city the plaintiff could have insisted that the city enter into a formal contract with it in accordance with its bid based upon the proposed specifications and contract on file. Had the city refused to enter into a formal contract in accordance with the plaintiff's bid and the city's acceptance thereof, it would no doubt have subjected itself to a claim for damages under the authorities just hereinbefore cited. However, the plaintiff did not stand on its rights, apparently believing, hoping, and expecting that the city would under the circumstances treat it with considerate fairness. In this the plaintiff erred to its great detriment. The plaintiff completed its work in compliance with the contract as executed, and then asked the city to pay for the extra cost of procuring the necessary sand and gravel at Chippewa Falls. The city refused to comply with plaintiff's request.

It is earnestly contended that under the facts found by the court it should be held that the city is estopped to deny that the expectations of the plaintiff, as embodied in its letter, are not a part of the contract. While the contention makes a rather strong appeal to this court's sense of justice, we are of the opinion that, under the law applicable to cities

which provides the mode in which they may enter into contracts or incur municipal liability, the contention is not sound. Although it has been held that in certain situations cities, like private individuals, may be estopped, whether acting in a governmental or proprietary capacity (*Eau Claire Dells Imp. Co. v. Eau Claire,* 172 Wis. 240, 179 N. W. 2; *State ex rel. Knapp v. Pohle,* 185 Wis. 610, 202 N. W. 148; *Milwaukee E. R. & L. Co. v. Milwaukee,* 209 Wis. 668, 245 N. W. 860), we have found no decision of this court in which it has been held that a city may incur municipal liability by estoppel where the applicable mandatory statutes have not been complied with. To so hold would operate to nullify the several statutes which have been enacted by the legislature for the purpose of safeguarding the interests of municipalities. The whole tenor of our decisions has been to require municipal corporations implicitly to obey the law in regard to the letting of contracts or to the incurring of municipal liability, and to deny to claimants against municipalities recoveries unless the law relating to the making of municipal contracts has been fully complied with. In *Chippewa Bridge Co. v. Durand,* 122 Wis. 85, 99 N. W. 603, it was said:

"The general rule is that a municipality is without authority to make a contract having any vitality whatever otherwise than for the objects and in the manner prescribed by law, and that one in form entered into in any other manner than substantially that provided by law, where the provisions in that regard are coupled with a prohibition to otherwise contract, imposes no liability on the municipality even though it is performed by the opposite party."

In the very recent case of *Journal Printing Co. v. Racine,* 210 Wis. 222, 246 N. W. 425, the formalities that must be followed in municipal contracting were again considered. It was there held that recovery against the city on a *quantum meruit* basis could not be had where the statutory requirements had not been complied with. Numerous cases to the

same effect are cited in the opinion. Under certain circumstances, the rule may seem to be harsh and to result in injustice, but the rule exists for the purpose of safeguarding municipal contracts and dealings to the end that the interests of the public, so far as is possible, may be protected. Sec. 62.12 (6) (c), 1929 Stats., provides:

"No debt shall be contracted against the city nor evidence thereof given unless authorized by a majority vote of all the members of the council."

Sec. 62.11 (3) (d) provides in part as follows:

"On the adoption of any measure . . . appropriating or disbursing money, or creating any liability or charge against the city or any fund thereof, the vote shall be by ayes and noes."

Sec. 62.15 (1) requires that all public work, the estimated cost of which shall exceed $500, shall be let by contract to the lowest bidder. It is clear that the city, by taking no action with respect to approving the contents of the plaintiff's letter, incurred no liability to the plaintiff.

*By the Court.*—Judgment affirmed.