Cullen and another, Appellants, vs. Rock County, Respondent.

*November 9—December 7, 1943.*

238

For the appellants there was a brief by *McGowan & Geffs* of Janesville, and oral argument by *George S. Geffs.*

*Harry F. Knipp,* acting district attorney of Rock county, for the respondent.

WICKHEM, J.   On May 8, 1940, the county board of supervisors of Rock county appropriated the sum of $40,000 for the erection of a garage and office building for the county, and instructed the highway committee to take the proper steps to secure its erection.   The highway committee hired one Chase, an architect, to prepare plans and specifications and to supervise the construction.   On April 3, 1941, bids were advertised for.   The notice for bids stated that plans and specifications were obtainable at the office of the county highway department and that the highway committee reserved the right to reject any and all bids received, and to retain any or all bids for thirty days after the day of opening.   It was required that each bid be accompanied by a bid bond or bank draft in an amount of at least five per cent of the amount of the bid as a guarantee that the bidder would execute a proposed contract and bond within ten days after being awarded the contract.   Plaintiffs obtained the plans and specifications accompanied by a form of proposal or bid sheet.   This bid sheet included a statement by the bidder that he was familiar with the plans and specifications, local conditions, etc., material, etc., at specified prices. There follows blank spaces to insert the various items making up the total bid.

This particular bid sheet had an unusual feature which is the foundation of this controversy.   There was attached a

supplemental schedule of unit prices for changes and additions. In the form of bid sheet this schedule read :

"The following unit prices will apply in event additions to or deductions from the work required in the base bid and accepted alternates are ordered :

"1. Concrete in walls, footings and slabs such as in pipe tunnels, including reinforcing, forming, etc., per cubic yard. . . .

"2. Excavation for trenches and pipe tunnels at depth not over six feet below grade, per cubic yard. . . .

"It is understood and agreed by the undersigned, that the Rock county highway committee reserves the unrestricted privilege to reject any or all of the foregoing unit prices in the within paragraph which it may consider excessive or unreasonable, or to accept, by including the same in the contract as unit prices applicable in the event of additions to or deductions from the work to be performed under the contract, any or all of such unit prices which it may consider fair and reasonable."

The curious feature of this case is that the blanks were filled on all the sheets before they were given out. Item 1 was filled in at "$20 per cu. yard" and item 2 at "$0.75 per cu. yard." Thus, no competitive bidding was contemplated or permitted upon these items, in spite of the fact that the agreement which concludes the supplementary schedule as well as the leaving of blanks would indicate that when the form was prepared it was intended that there would be bidding on these items. Plaintiffs, considering the supplemental schedule not to be germane to the plans, specifications, or bid, struck out the figures of this schedule. They submitted their bid in an otherwise regular fashion and on April 14, 1941, the minutes of the county highway committee show the bids were opened and tabulated and the following resolution passed :

"Motion made and seconded, that the contract be awarded to J. P. Cullen & Son, provided the preliminary arrangements can be made with J. P. Cullen & Son to the satisfaction of Mr. Moore and Mr. Chase, as per his bid."

Plaintiffs' position is that their proposal was in accordance with the plans and specifications; that it was accepted by the resolution of April 14, 1941, and that a contract was created as fully as though a formal contract had been written out and signed by the parties. They cite in support of their contention the case of *L. G. Arnold, Inc., v. Hudson*, 215 Wis. 5, 254 N. W. 108, which they claim to be decisive in their favor. In that case, which we shall later discuss in detail, it was held that the acceptance by a city of the bid of a contractor for street improvements, according to proposed specifications *and a proposed contract,* constituted a contract although it was understood that a formal contract was later to be executed accompanied by a surety bond. We think that the starting point in this case ought not to be a consideration of the doctrine of the *Hudson Case* but rather a consideration of the powers and duties of county boards as to the manner of building and repairing county buildings. It is elementary, as stated in 3 McQuillin, Mun. Corp. (2d ed.) sec. 1288, that—

"In the absence of charter or statutory requirement, municipal contracts need not be let under competitive bidding. . . ."

We discover nothing in the statutes which imposes upon the county board a duty to take bids for the building of county buildings.

Sec. 59.07. (4), Stats., provides:

"The county board of each county is empowered at any legal meeting to: . . .

"(4) Build and keep in repair the county buildings and cause the same to be insured in the name and for the benefit of the county, and in case there are no county buildings, to provide suitable rooms for county purposes.

"(a) Provide and designate the location of buildings to shelter the machinery and equipment used for construction and maintenance of highways."

No requirement for competitive bidding is contained in this section.

Sec. 66.29 (1) (b), Stats., provides:

"The term 'municipality' shall mean and include . . . or other public body *charged* with the *duty* of receiving bids for and awarding any public contract."

It will be noted that this section does not include any public body within the term "municipality" unless it has by some other section been charged with the duty of receiving bids for the awarding of a public contract.

Sec. 66.29 (1) (c), Stats., provides:

"The term 'public contract' shall mean and include any contract for the construction, execution, repair, remodeling, improvement of any public work, building, furnishing of supplies, material of any kind whatsoever, proposals for which are required to be advertised for by law."

Here it will be noticed that the test of a public contract is whether proposals are required to be advertised for by law implying, of course, that in some instances there is no such requirement.

Sec. 62.15 (1), Stats., provides:

"All public work, the estimated cost of which shall exceed five hundred dollars, shall be let by contract to the lowest responsible bidder. . . ."

This section applies only to cities.

The foregoing sections are the only ones that we can discover or that have been cited to us having the slightest bearing on the duty of the county to advertise for bids for the construction of this building, and it is our conclusion that there is no statutory duty so to advertise or to let the contract to the lowest bidder.

In this respect the case is quite different from the *Hudson Case, supra;* which involved a city which was bound by law to let the contract to the lowest bidder. The county here was free to build the building itself, or to make any sort of contract to build the building that it deemed provident. If, as here, it yielded to custom and ordinary business prudence and asked for bids, it could make such requirements upon bidders as it deemed wise and prudent. One of the requirements imposed here was the supplementary schedule. There is no occasion to comment upon this schedule further than to say that if the county had been required to advertise for bids and to let the contract to the lowest bidder, it is seriously to be questioned whether the county could specify unit prices on a portion of the work because by doing this it would withdraw that portion from competition. But since the county had no duty to call for bids, it could impose any terms that it deemed prudent and the only recourse of a prospective bidder who objected to this manner of submission would be a refusal to bid.

In view of the powers of the county board, we have here a question of contract rather than of statutory duty. Where as in the *Hudson Case, supra,* the city has a statutory duty to accept the lowest bid, a duty to execute a formal contract after acceptance of the bid may be found in the statutory requirements even if the rules of contract create no such obligation. Here, however, there is nothing to inhibit the operation of ordinary rules of contract. Plaintiffs made a proposal. It was not in accordance with the invited proposal but we shall not spend much time upon that aspect of the case. The county could ask any proposal it liked, and plaintiffs were free to make a counterproposal. Since plaintiffs' proposal could have been rejected, even if it was completely regular, the fact that it was considered to be irregular appears to us not to be of great consequence. Neither do we propose to consider in detail whether under the doctrine of cases like *Bostwick v. Mutual Life Ins. Co.* 116 Wis. 392, 89 N. W. 538, 92 N. W. 246, the

county, having overlooked plaintiffs' deletion of the supple-
mentary schedule, is estopped from claiming that the contract
was not closed by the resolution of April 14, 1941.

We will assume for the purpose of disposing of this case
that these propositions ought all to be decided in favor of
plaintiffs. There are left certain difficulties that are fatal to
plaintiffs, as it appears to us. The acceptance of the bid did
not constitute a contract. There was no duty on the part of the
county to accept the lowest bid and there was on file no pro-
posed contract complete except as to amounts to which the
bidder could assent in advance. In such a case as the *Hudson
Case, supra,* where the city was required to accept the lowest
bid, it could at least be argued that a duty was imposed upon the
city to execute a formal contract in accordance with the speci-
fications. Where, in addition, as in that case, the proposed
formal contract, blank only as to price and signature, was on
file, together with the plans and specifications, it was proper
to hold that a contract was closed when the bid was accepted.

Here we have not the same situation. Not only was there
no proposed formal contract on file but plaintiffs' bid was ac-
cepted subject to the actual negotiation of a formal contract.
That important details of this formal contract were wholly
undetermined is indicated by the scope of the subsequent nego-
tiations. These deal with such essential matters as the time of
commencing and finishing the job and the method of payment.
There were also negotiations concerning substitution of ma-
terials, and the formal contract proposed by the county in-
cluded the supplementary schedule with unit prices which the
plaintiffs had deleted from their bid. There never was any
agreement upon the inclusion of this schedule.

From all this we can only conclude that the resolution of
April 14, 1941, was simply a provisional acceptance of the bid,
conditional upon negotiating and executing a formal contract,
many of the important items of which were wholly unsettled
at the time; that a contract was never entered into, not only

because no formal contract was executed, but also because no agreement in any form was ever reached. See *Howard v. Industrial School,* 78 Me. 230, 3 Atl. 657; *Edge Moor Bridge Works v. Bristol,* 170 Mass. 528, 49 N. E. 918. There being no contract between the parties, there could be no breach by the county. The trial court correctly disposed of the matter and judgment must be affirmed.

*By the Court.*—Judgment affirmed.