CITY OF LAKE GENEVA, Respondent, v. STATES IMPROVEMENT COMPANY and another, Appellants.

*No. 1. Argued October 31, 1969.—Decided November 25, 1969.*
(Also reported in 172 N. W. 2d 176.)

52

For the appellants there was a brief by *Charne, Glassner, Tehan, Clancy & Taitelman,* and oral argument by *Ronald S. Jacobs,* all of Milwaukee.

For the respondent there was a brief by *Braden & English* and *James L. English,* city attorney, all of Lake Geneva, and oral argument by *James L. English.*

ROBERT W. HANSEN, J. Does the bid bond obligate the contractor and the insurance company to pay to the city five percent of the bid or to pay actual damages only, not to exceed five percent of the bid?

*The statute.*

The statute (sec. 62.15 (3)), providing for advertising for bids on the type of public works project here involved, requires:

". . . No bid shall be received unless accompanied by a certified check or a bid bond *equal to at least 5%* but not more than 10% *of the bid* payable to the city as a guaranty that if his bid is accepted he will execute and file the proper contract and bond within the time limited by the city. . . . In case he fails to file such contract and bond *the amount of the check or bid bond shall be forfeited to the city as liquidated damages.* The notice published shall inform bidders of this requirement." (Emphasis supplied.)

*The specifications.*

Using the language of the above statute, the specifications set forth that:

"No bid can be received or considered unless accompanied by a certified check *equal to 5 percent of the bid,* or a bid bond in equal amount payable to the City as a guaranty that if the bid is accepted, the Bidder will execute and file the proper Contract and Bond within ten days from the date the lowest responsibile Bidder's bid is accepted. In case the Bidder fails to file such Bond and Contract within the time set by the City, *the check or bid bond shall be forfeited to the City as liquidated damages.*" (Emphasis supplied.)

*The bid bond.*

The bid bond of the insurance company, which accompanied the bid of the contract on the storm sewer project, provided:

"Know all men by these presents: That we, States Improvement Company . . . as principal, and the United Pacific Insurance Company . . . as surety, are held and firmly bound unto the City of Lake Geneva, Wisconsin as

obligee, *in the sum of five percent (5%) of the amount of the attached bid. . ."* (Emphasis supplied.)

*The trial court.*

The trial court held that when the contractor failed to execute the formal work contract and submit a performance bond, it became liable to the city for five percent of the bid, the liquidated damages required by the statute, set forth in the specifications and provided for in the bid bond.

*Escape hatches.*

The argument of the defendants is that two escape hatches in the bid bond reach back to alter the principal obligation of the principal and surety on the bid bond so that only actual damages, not in excess of five percent, need be paid to the city in the event of breach of the bid agreement. Both are conditions of defeasance meaning that, if either occurs, the liability on the bid bond becomes null and void.

The first comes from the statute itself, providing that liability on the bond ceases when the bidder enters into a formal work contract with the municipality and gives bond for the faithful performance of such formal contract. That did not happen here. This condition has nothing to do with what is to be paid in the event of breach. It has to do only with the termination of the liability where there is no breach.

The second condition of defeasance is not to be found in the statute. It is applicable where the bidder fails to execute a formal work contract and to submit a performance bond, but only where the bidder pays to the obligee the damages which the obligee may suffer not exceeding the amount of the bond. Where the bidder makes such direct payment of actual damages to the municipality, the bond is null and void. That has not happened here.

We need not reach the question of whether this additional condition of defeasance can be added to the bid bond required by the statute until we have a case in

which a bidder has backed out on an accepted low bid *and also* has paid the municipality the actual damages it has sustained. It may well be that this condition is no more than a spelling out of a doctrine of equitable estoppel that would prohibit a municipality from accepting its actual damages and additionally seeking to recover on the bid bond for the same breach of the same contract. If the language or addition to the statutorily required bond is more than that, it is to be eliminated and disregarded as surplusage. (*See* 12 Am. Jur. 2d, *Bonds,* pp. 495, 496, sec. 26.) Where as here the contingency to which the additional condition refers, to wit: the payment of actual damages to the city by the principal, has not taken place, the condition of defeasance does not become operative and is nonapplicable. The obligation of the defendants is to pay what the bond provides and the statute requires: Five percent of the bid. If, as argued, the defendants intended to submit a bid bond that did not comply with the statute, they botched the job. The caboose they added does not derail the train.

### Damages or penalty?

The defendants attack the trial court judgment (and without saying so the statute involved as well) on the ground that the provision for liquidated damages actually is a penalty. Wisconsin long has recognized the distinction between liquidated damages and a penalty, holding that "Whether or not a contractual provision calls for a penalty or liquidated damages is a question of law for the court." *McConnell v. L. C. L. Transit Co.* (1969), 42 Wis. 2d 429, 438, 167 N. W. 2d 226. However, here we deal with something more than ascertaining the actual intent of the parties to the agreement. The stipulated liquidated damages are provided for in the applicable statute. In fact they are required by such statute. Unless the axe is to be laid to the entire tree of establishing liquidated damages for breach under any circumstances,

the provision for payment of five percent of the bid must be held to be a proper setting of liquidated damages.

*Pleadings vs. proof.*

The defendants call attention to the fact that the city in its complaint alleged that ". . . by the terms of said bid bond the Union [United] Pacific Insurance Company agreed to pay plaintiff the damages which the plaintiff might suffer. . ." The claim is that the city should be held to what it incorrectly stated the bond to provide instead of to what the bond actually provided. It is claimed that the city's proving up liquidated damages rather than the actual damages referred to in the complaint constitutes a prejudicial variance between pleadings and proof. It is clear that a variance was created when evidence introduced at the trial was inconsistent with a fact alleged in the complaint. However, in this state, by statute it is provided: "(1) No variance between the allegation in a pleading and the proof shall be deemed material unless it misleads the adverse party to his prejudice." (Sec. 263.28, Stats.) Where the adverse party is so misled, the court may order the pleading amended. When the variance is not material, the fact shall be found in accordance with the evidence.

Here there is no showing of the defendants being misled. They were aware of the bid bond terms, including the specific provision for the payment of liquidated damages. They were aware of the specifications and bid bond requirements pursuant to which the bond was prepared and submitted. They were aware of the statute requiring such bid bond and what the statute required to be included. They were aware that the wherefore clause of the plaintiff's complaint requested the amount of liquidated damages set forth in the bid bond. Under these circumstances, it cannot be said that the defendants were misled by the variance.

Additionally, the defendants did not object to the introduction at the trial of the contract, specifications or the bid bond itself. This court has said, "Where a good cause of action appears from the proofs received without objection, a variance between the allegations of the complaint and the evidence is not material. The pleadings may be taken as amended to conform to the proofs." *Duffy v. Scott* (1940), 235 Wis. 142, 147, 292 N. W. 273. Either the trial court or this court may deem the pleadings so amended when the variance is immaterial. *Walber v. Walber* (1968), 40 Wis. 2d 313, 320, 161 N. W. 2d 898.

*The missing witness.*

A motion for new trial was made based on the absence of a defense witness, the only witness the defendants intended to present. No subpoena was issued for such witness, although, at the start of the trial, defense counsel indicated that the witness would be present. When the time came for the defense to put in its case, the witness was not present. No motion for a continuance was made. No request for a recess was made. While an affidavit from a physician was presented on the motion for new trial stating that the witness was unable to attend the trial, the trial court held that the doctor's affidavit did not establish that the witness was unable to contact the defense attorney. The missing witness was a Mr. Bihlmire, president of States Improvement Company. Resting his case, defense counsel stated: "If the Court please. I have no further witnesses and the defense rests."

The trial court held that excusable neglect had not been established, and denied the motion for a new trial. This is largely a matter of trial court discretion. The only grounds for reversal would be an abuse of that discretion. *See Padek v. Thornton* (1958), 3 Wis. 2d 334, 88 N. W. 2d 316. On the record here we find no abuse of discretion on the part of the trial court in denying the motion for a new trial.

*Interest from when?*

The trial court allowed interest on the amount of recovery from May 8, 1964, the date when the executed formal contract and performance bond were to be returned to the city. It did so correctly. Once the damages here involved are held to be liquidated damages, then interest runs from that date, not from the date of the judgment. As this court has stated:

"Wisconsin has adopted the distinction between liquidated and unliquidated claims in determining whether prejudgment interest is payable in a contract liability dispute. . .

". . . one is: '. . . entitled to recover such interest on all such items of damage from the time that the probable pecuniary amount or money value thereof could have been computed or liquidated to a reasonable certainty by ascertaining the then current market or reasonable value, and the time that payment thereof first became due because of the terms of a contract, or, if none, then because of a demand for payment.' " *Congress Bar & Restaurant v. Transamerica Ins. Co.* (1969), 42 Wis. 2d 56, 70, 165 N. W. 2d 409.

Here the payment of the five percent of the bid as liquidated damages became due, as provided by the contract, when the contractor failed to execute and file the formal work contract and the performance bond. The trial court was correct in its determination that interest runs from May 8, 1964, not from the date of the judgment.

*By the Court.*—Judgment affirmed.