VIRGINIA B. HART, Chairman Department of Industry, Labor andHuman Relations
Your predecessor has advised me that a Wisconsin common school district contemplates construction of a school bus garage, and that it plans to utilize a "turnkey" method of construction. By this method the district will purchase the completed project from a contractor-developer. My opinion has been requested on two questions:
1. May this school district and other municipalities utilize the turnkey construction method?
2. If so, is such a method of construction subject to the prevailing wage law, sec. 66.293 (3), Stats.?
As to the first question, it is my opinion that turnkey construction is not per se unlawful in the case of unified, common and union school districts. The general rule is that a municipality may use any construction method unless the statutes provide otherwise. See 63 C.J.S., Municipal Corporations, sec. 1063, p. 699. Wisconsin law is in accord. As stated in Cullen v.Rock County (1943), 244 Wis. 237, 242, 12 N.W.2d 38:
 "In this respect the case is quite different from [L. G. Arnold, Inc., v. Hudson (1934). 215 Wis. 5, 254 N.W. 108] which involved a city which was bound by law to let the *Page 101 
contract to the lowest bidder. The county here was free to build the building itself, or to make any sort
of contract to build the building that it deemed provident." (Emphasis added.)
Unified, common and union school districts are not required to construct by advertising and competitive bids. See ConsolidatedSchool Dist. v. Frey (1960), 11 Wis.2d 434, 439, 105 N.W.2d 841.
I have considerable doubt, however, as to whether municipalities which are required to take competitive bids (such as city school districts, see sec. 120.55, Stats.), may construct by turnkey. The reason is that turnkey and competitive bidding are regarded as alternatives. See Comment, Turn-key PublicHousing in Wisconsin, 1969 Wis. L. Rev. 231, 237-239.
Since the school district in question is a common school district, it is not per se unlawful for it to construct by the turnkey method. It is not possible to state that every use of turnkey construction is lawful. Legality may turn on the facts peculiar to particular cases. See Akin v. Kewaskum CommunitySchools (1974), 64 Wis.2d 154, 218 N.W.2d 494.
The answer to your second question is yes.
The essence of the prevailing wage law, sec. 66.293, Stats., is that workers employed on public construction projects must be paid the economic benefits prevailing in the area. Justice Cardozo described the purpose of such a law to be:
 ". . . an attempt by the state to hold its territorial subdivisions to a standard of social justice in their dealings with laborers, workmen, and mechanics." Austin v. City of New York (1932), 258 N.Y. 213, 217, 179 N.E. 313, 314.
The Wisconsin Supreme Court addressed itself to the prevailing wage law as it affects highway construction in Green v. Jones
(1964), 23 Wis.2d 551, 128 N.W.2d 1. Two relevant purposes of such a law were stated: (1) to stimulate and protect the economic position of individual workers, 23 Wis.2d at 558, 559; and (2) to cover the work done without regard to the relationships involving the government or the contractor, 23 Wis.2d at 561,562. *Page 102 
The language of the prevailing wage law is sufficiently broad to include turnkey construction. Section 66.293 (3), Stats. 1971, included:
 "Every municipality, before soliciting bids on a contract for any project of public works . . ."
As amended by ch. 181, Laws of 1973, however, sec. 66.293 (3) now includes:
 "Every municipality, before making a contract by direct negotiation or soliciting bids on a contract, for any project of public works . . . ." (Emphasis added.)
Since the 1971 statute was restricted to municipalities which solicited bids, it did not cover construction done by other than competitive bidding. Thus, all negotiated work, including turnkey construction, was exempt. Since turnkey construction is a form of making a contract by direct negotiation, turnkey construction is now included within sec. 66.293 (3), Stats.
Any other interpretation would frustrate rather than serve the purposes of the prevailing wage law. Surely if the school district constructed the bus garage by taking competitive bids, the laborers' work would be covered. Since it is the individual whom the legislature seeks to protect and since it is the nature of the work rather than the contractual relationship between the government and the contractor which is dispositive of coverage, it is my opinion that the operation of the prevailing wage law cannot be circumvented by the turnkey method of construction. It is my opinion, therefore, that public works projects are subject to sec. 66.293 (3), Stats., even if construction is by the turnkey method.
Section 66.293 (3), Stats., however, does not embrace all turnkey construction. It applies only to municipal projects for "public works." Not all turnkey projects are public works projects. For example, turnkey projects financed by industrial revenue bonds under sec. 66.521, Stats., typically are private industrial projects. See 63 OAG 145 (1974). Although the use of public financing under sec. 66.521 serves a public purpose sufficient to support the constitutionality of the law, the projects financed thereby do not, merely as a consequence of the method of financing, become public in character. See State exrel. Hammermill Paper Co. v. La Plante (1973), 58 Wis.2d 32,205 N.W.2d 784. *Page 103 
This is not to say, however, that sec. 66.521 does not cover the financing of public works projects. Chapter 265, Laws of 1973, substantially broadened the definition of a "project" subject to financing by industrial revenue bonds (see sec. 66.521 (2) (b), Stats.) to include categories of projects which, in some contexts could be public, rather than private, in character.
Whether a particular project is public or private requires an analysis of the specific factors involved. Each case must be separately evaluated. Generally speaking, however, a public works project is one for the use of a public body. See 35 Words 
Phrases, pp. 134 et seq. The fact of public involvement through public monies or through ultimate public ownership does not itself make the project one of public works. See United States v.Harrison and Grimshaw Construction Co. (3rd Cir. 1962), 305 F.2d 363,367; Grant v. Milwaukee (1914), 156 Wis. 635, 639,146 N.W. 780; Knuth v. Fidelity Casualty Co. (1957), 275 Wis. 603, 608,83 N.W.2d 126; Ozaukee Sand Gravel Co. v. Milwaukee (1943),243 Wis. 38, 9 N.W.2d 99; and Standard Oil Co. v. Clintonville
(1942), 240 Wis. 411, 414-416, 3 N.W.2d 701.
BCL:CDH