CITY OF MERRILL, Plaintiff-Respondent and Cross-Appellant, v. WENZEL BROTHERS, INC., and another, Defendants-Appellants and Cross-Respondents.

Supreme Court

*No. 76–584.  Argued March 27, 1979.—Decided May 1, 1979.*
(Also reported in 277 N.W.2d 799.)

677

For the appellants there were briefs by *Robert J. Kay* and *Geisler & Kay, S.C.*, of Madison, and oral argument by *Robert J. Kay*.

For the respondents there was a brief by *William A. Wulf* and *Sazama & Wulf, S.C.*, of Merrill, and oral argument by *William A. Wulf*.

CONNOR T. HANSEN, J.   The essential facts are not in dispute. Early in 1972, the City of Merrill advertised for bids on construction of a wastewater treatment plant addition.   The bid proposal required that each bid be accompanied by a certified check or bid bond for 10 percent of the bid amount ". . . as a guarantee that after a bid is accepted the bidder will execute and file the contract and a 100% performance bond within five days after the award of the contract. . . ." The proposal also said that no bid could be withdrawn ". . . without the consent of the Owner for a period of *45 days* after the scheduled time of closing bids. . . ." The instructions to bidders explained that the award, if made, would be made to the lowest responsible bidder.   The bid bonds of all but the three lower bidders were to be returned within five days of the bid opening and those of the three lowest bidders would be returned within three days of the city's approval of the contract and construction bond.   Work was to be commenced within 10 days after notification of the award.   The bid proposal also contained a copy of the contract agreement and a form for the bid bond.

Wenzel submitted a bid of $320,000 for the mechanical portion of the contract accompanied by a bid bond in the amount of $32,000 executed by the Maryland Casualty Company as surety. This bid bond is the subject of this litigation.

William Wenzel, president of Wenzel Brothers, Inc., was present when the bids were opened on April 25, 1972, and there learned that his company had submitted the lowest bid.   On April 26th, John A. Strand & Associates, Inc., the city's consulting engineering firm for the project, notified Wenzel by letter that it had submitted the lowest bid.   This letter also requested that Wenzel supply the financial information and references necessary for Strand to recommend acceptance of the bid.   On April 28th, Strand requested that Wenzel execute the "Cer-

tificate of Nonsegregated Facilities" required for federal approval of the project. Wenzel submitted the qualifying references and executed the certificate.

Following receipt of this information, Strand recommended that Wenzel be awarded the contract. However, because the project involved federal financing and Environmental Protection Agency (EPA) approval of the awards was necessary, Strand also advised the city to resolve that the awards become final only upon EPA approval. The Merrill Board of Public Works adopted Strand's recommendations on May 4th and on May 9th the Merrill Common Council passed a resolution awarding the contract to Wenzel with the resolve that the award not become final until approved by the EPA. Wenzel was advised by Strand of this resolution in a letter dated May 16th. Strand did not receive notice of approval from the EPA until the morning of June 9th, a Friday, which was the 45th day after the bids were opened. That same morning Rodney H. Hassett, an engineer for Strand, called Wenzel and advised him of the EPA approval and told him the contracts would be in the mail that day. The contracts were dispatched that day by United Parcel Service and received by Wenzel on Monday, June 12th.

On June 10th, after the 45 days had elapsed, Wenzel mailed the city a letter in which he stated he was withdrawing the bid because no award had yet been made and the company had other work commitments. This was the first time Wenzel had indicated any dissatisfaction with its position. The city received Wenzel's letter on June 12th. Additional letters and meetings followed but the parties remained in essentially the same positions, with the city insisting that Wenzel execute the contract and Wenzel refusing because of other work commitments and alleged errors in the bid.[1] Ultimately the mechanical

[1] On this appeal Wenzel concedes that it is not entitled to equitable relief for a mistake in a bid under sec. 66.29(5), Stats.

contract was awarded to the second lowest bidder for an additional $46,841 and the city brought this action against Wenzel and its surety on the bond.

In its original decision, dated May 28, 1976, the trial court found that Wenzel had timely withdrawn its bid and was therefore relieved of the obligation of its bid bond. However, on motion of the city for reconsideration, the trial court withdrew its first decision. In its second opinion, which was based upon the trial court's interpretation of *Nelson Inc. v. Sewerage Comm. of Milwaukee*, 72 Wis.2d 400, 241 N.W.2d 390 (1976), mandated May 4, 1976, the trial court found that a binding contract had been effectuated and the city therefore entitled to recover on the bid bond. The trial court also found that the city was entitled to prejudgment interest from the date the executed contract was to have been returned. Judgment was entered accordingly in the second decision of the trial court. The appellants then moved to amend the judgment as it related to prejudgment interest and the trial court ordered that the judgment be amended to allow only post-judgment interest, commencing with the date of the second opinion.

Wenzel and its surety appeal from the judgment awarding the city damages on the bid bond, and the city cross-appeals from the amended judgment which denied it prejudgment interest.

This appeal presents the following issues:

1. Whether the city made a timely award to Wenzel which precluded Wenzel from withdrawing its bid and therefore entitled the city to demand forfeiture of the amount of the bid bond upon Wenzel's refusal to execute a contract?

2. Whether appellants' liability is limited to those damages actually sustained by the city?

3. Whether the city is entitled to prejudgment interest from the date the executed contract was to be returned?

It is the contention of the appellants that the bid bond was conditioned on the "award" of the contract and that such "award" could not occur unless Wenzel actually had physical possession of the contract within the 45-day period. Since Wenzel did not have physical possession of the contract within the 45 days, Wenzel takes the position it was entitled to withdraw its bid on the 46th day. Under the facts of this case, we cannot accept such a proposition.

As previously stated, William Wenzel was present when the bids were opened; he was advised that his company was the low bidder; he knew the Board of Public Works had accepted his bid and the city council had resolved to award the contract to his company subject only to EPA approval, and he executed a "Certificate of Nonsegregated Facilities" to assist in securing EPA approval. On the 45th day he was advised that EPA approval had been received and that the contract would be sent to him that day, a Friday. Wenzel received the contract the following Monday, June 12th. On the intervening Saturday Wenzel attempted to withdraw its bid by a letter which was received by the city on Monday, June 12th.

The question presented by these facts is whether an enforceable contractual relationship had been established between the city and Wenzel prior to the expiration of 45 days so that Wenzel could not withdraw from the contract without incurring liability on its bid bond.

We conclude that the award became final on June 9th, the 45th day, when the fact of EPA approval was communicated to Wenzel and the contract was sent to it. Wenzel's subsequent withdrawal of its bid and refusal to execute the contract invoked the liability of the surety on its bid bond.

The bidding here was conducted pursuant to secs. 62.15 and 66.29, Stats. Neither statute distinguishes "award"

from "acceptance." Sec. 62.15(3) only requires that a bid bond be furnished,

". . . as a guaranty that if his bid is accepted he will execute and file the proper contract and bond within the time limited by the city. . . ."

and sec. 62.15(12) refers to how the contract is to be "executed." The statute does not use the term "award."

The advertisement for bids used both terms:

". . . as a guarantee that after a bid is *accepted* the bidder will execute and file the contract and a 100% performance bond within five days after the *award* of the contract." (Emphasis added.)

The bid instructions generally referred only to an *award*. The bid bond referred to an *award* in the following terms:

". . . [I]f the Owner shall make any award to the Principal for Treatment Piping for Water Treatment Plant, City of Merrill, Wis. according to the terms of the proposal or bid made by the Principal therefor, and the Principal shall duly make and enter into a contract with the Owner in accordance with the terms of said proposal or bid and award and shall give bond for the faithful performance thereof with Maryland Casualty Company, Surety or Sureties approved by the Owner; or if the Principal shall, in case of failure so to do, pay to the Owner the damages which the Owner may suffer by reason of such failure, not exceeding the penalty of this bond, then this obligation shall be null and void; otherwise it shall be and remain in full force and effect."

From these bond provisions the appellants conclude that the bond, by its terms, is conditioned on the granting of a formal written award. They claim the action of the common council awarding the contract subject to EPA approval was insufficient to bind appellants even though Wenzel was advised of EPA approval by telephone and the contract was sent to it on the 45th day.

The trial court initially agreed with this position on the ground that the requirements that the contract be executed within five days and work be commenced within 10 days of the award contemplated a conveyance of the award "in an official manner." Because such a formal written award was not in the possession of Wenzel by June 9th, the trial court initially held that Wenzel was entitled to withdraw its bid on June 10th. The trial court concluded that the city could not be bound by the telephoned acceptance so Wenzel could not be bound by it either.

In its second opinion, after consideration of the city's motion for reconsideration, the trial court, in reliance on the recent case of *Nelson Inc. v. Sewerage Comm. of Milwaukee, supra,* reached the opposite conclusion because oral notice had been given and written notice had been sent on the 45th day.

A general rule that a bid is an offer which becames a binding contract on acceptance is set forth in several treatises.[2] However, the rule is then illustrated with cases representing such varying statutory requirements that neither the general rule nor case comparison is of any practical assistance in this case.

One authority has classified Wisconsin as being among those states which hold:

". . . that the acceptance of a valid bid by the proper municipal authorities, where all legal requirements are observed, constitutes a binding contract, . . ." 10 McQuillin, *Municipal Corporations,* §29.80 at 441 (3d ed. 1966).

This reference goes on to state that a contract

". . . may come into existence upon the acceptance of a bid, even though as to certain formalities or details

---

[2] *See, e.g.,* 64 Am. Jur.2d, *Public Works and Contracts,* secs. 63, 65 (1972); 72 C.J.S. Supp., *Public Contracts,* secs. 14, 15 (1975).

there has been a defective compliance with legal formalities or requirements. . .

"However, in many cases it has been observed that the mere acceptance of a bid does not necessarily constitute a contract. Whether a contract was complete on the award, or a subsequent written contract was contemplated depends upon a proper construction of the steps taken by the parties concerned, in view of the applicable law. Ordinarily, no written contract need be executed, unless required by statute, but the improvement ordinance, the successful bid duly signed, and the resolution accepting the bid duly passed and entered of record constitute a written contract." *Id.* at 442, 443.

Prior to the decision in *Nelson Inc. v. Sewerage Comm. of Milwaukee, supra,* this court had considered the conditions under which a public construction bid becomes a contract on at least two occasions. In both of these cases the bidder sought to hold the city to the contract.

In *L. G. Arnold, Inc. v. Hudson,* 215 Wis. 5, 254 N.W. 108 (1934), the court said acceptance of the bid by the city constituted the contract even though a formal contract remained to be executed. The court held that after acceptance the successful bidder could compel the city to execute the contract. The court found the rule had been applied in three United States Supreme Court cases. *United States v. Purcell Envelope Co.,* 249 U.S. 313 (1919); *Harvey v. United States,* 105 U.S. 671 (1881), and *Garfielde v. United States,* 93 U.S. 242 (1876).

The *Arnold* holding was subsequently considered in *Cullen v. Rock County,* 244 Wis. 237, 12 N.W.2d 38 (1943), where this court said that a resolution accepting a bid would constitute a contract and create a duty to execute a formal contract only where there is a statutory duty to let the contract to the lowest bidder and there is a formal contract on file. The court did not find a binding contract in *Cullen* because there was no contract on file and the bid had been accepted subject to negotiation of a formal contract, the details of which were then undetermined.

Neither of these cases appear to have been considered by the trial court and its decision on this issue rested entirely on the *Nelson Case*.

*Nelson Inc. v. Sewerage Comm. of Milwaukee, supra,* involved a bidder who had attempted to withdraw his bid pursuant to sec. 66.29 (5), Stats., on the grounds of mistake and omission. The primary issue in the case was whether, under that statute, the bidder had given timely notice of his discovery. As an alternative objection the bidder contended that his bid had not been timely accepted. The bid proposal in *Nelson Inc. v. Sewerage Comm. of Milwaukee, supra,* stated that prices could not be escalated provided the bid was accepted within 60 days of opening and that the bidder must agree to enter into a contract within 10 days of notice of acceptance. The notice to bidders contained the same language regarding the bid deposit as the advertisement did in the instant case.

Nelson's bid had been accepted by resolution in his presence at a commission meeting within the 60-day period. However, the formal notice of award was dated and mailed on the 66th day. This court concluded that the bid proposal only required acceptance in 60 days, not formal written notice, and that the city's acceptance had been adequately communicated to the bidder at the commission meeting. The court held that a contract had been formed without written notice or execution of a formal contract.

Appellants would distinguish *Nelson* on two grounds. First, they note that the bid proposal in *Nelson Inc. v. Sewerage Comm. of Milwaukee, supra,* did not provide for a right to withdraw, only a 60-day restriction on escalation of prices. As the trial court here correctly concluded, this appears to be a distinction without a difference. Both cases involved a bidder seeking relief from bid proposals and both involved the question whether a

binding contract had been formed within the time limit. The decision on this issue in the *Nelson Case* was made without reference to the rights the bidder had at the end of the period.

Next, the appellants point out that the *Nelson* bid deposit was conditioned on acceptance, rather than award. However, in both *Nelson Inc. v. Sewerage Comm. of Milwaukee, supra,* and the case at bar, the bid deposit was required to guarantee that if the bid was accepted the bidder would execute a contract within five or ten days of the *award.* In the *Nelson Case* the language of the bid proposal tended to confuse the deposit requirement somewhat by saying that the contract had to be executed within 10 days of *acceptance.* Further, unlike the bid proposal here, the one in *Nelson* expressly tied acceptance to the time limit for escalation of prices. Given the fact that both bid proposals required security for the statutory reason, to insure a contract following acceptance, the other distinctions are irrelevant.

The appellants also challenge the application of the *Nelson* decision because they contend that it is inequitable to allow the city to accept a bid within the prescribed time period and then fail to execute the contract within that same period of time. Such a result, they say, has the effect of allowing the city to give itself an unauthorized extension of time. We are not impressed with the argument that the city was attempting to get an unauthorized extension time within which to accept the bid or that an attempt was being made to take unfair economic advantage by holding a bidder to a stale bid. Neither *Nelson Inc. v. Sewerage Comm. of Milwaukee, supra,* nor this case involve any such situation. As we examine this record all the evidence and the reasonable inferences that can be drawn therefrom demonstrate that the city was at all times ready to proceed. The only de-

lay was caused, not by any action of the city, but by the EPA delay. If there was any evidence that the city was deliberately causing a delay or attempting to take economic advantage of a bidder, we would be confronted with an entirely different situation.

The policy decisions enunciated in *Nelson Inc. v. Sewerage Comm. of Milwaukee, supra,* rest not on technical interpretation of the bid documents but on the public purposes promoted by the statutorily-mandated public bidding procedure. In discussing the bidder's right to amend or withdraw its bid, this court in *Nelson Inc. v. Sewerage Comm. of Milwaukee, supra,* stated:

"Public policy considerations operate to restrict the rights of a bidder on a public contract. Competitive bidding requirements were intended for the benefit and protection of the public. They are designed to prevent fraud, collusion, favoritism and improvidence in the administration of public business as well as to insure that the public receives the best work or supplies at the most reasonable price practicable. It follows from these considerations that a bid on a public contract is to be considered final and binding on the bidder. To protect the public interest, the municipal bidding authority is entitled to require that a bidder deposit a sum of money to guarantee the making of the contract on the terms bid. One author has described the consequences of submitting a bid on a public contract as follows:

" 'A bid submitted to a local government is deemed in law to be in the nature of an option for which consideration was given, creating a vested right of contract, of which the local government cannot be deprived except by its consent, and is remedial at law, by an action at damages, or enforcement in equity by specific performance, if feasible, or may be summarily dealt with by forfeiture of the deposit. "In the absence of equities justifying rescission or other equitable relief," says a New Jersey court, "a successful bidder cannot arbitrarily withdraw his bid at any time before acceptance. Such a bid is held to be in the nature of an option giving the

municipality a vested right of contract." ' . . ." *Nelson, supra,* at 408, 409.[3]

These policy considerations were not again repeated by this court when discussing the issue of the timeliness of the award which was six days after the advertised time period. However, the opinion leaves no doubt that policy factors were controlling in arriving at the decision in *Nelson Inc. v. Sewerage Comm. of Milwaukee, supra.*

Appellants further rely on a rule contained in the 1972 CCH Government Contract Guide, in 14 Am. Jur. Trials, Representing the Government Contractor, secs. 30, 47 (1968), and in *Schlesinger v. United States,* 390 Fed.2d 702 (Ct. Cl. 1968), which says that a contract award is made by mailing a formal award document to the bidder. However, this rule is based on explicit requirements for federal contracts contained in the United States Code and federal regulations. *See, e.g.,* 41 USC sec. 253(b); 41 CFR sec. 1–2.407–1. Appellants also cite an early federal case, *Haldane v. United States,* 69 Fed. 819 (8th Cir. 1895), which actually involved a situation in which *personal,* rather than mailed, notice was contemplated because the bidders had not submitted the lowest bid and were not aware that they had been awarded the contract. The *Haldane Case* is helpful in that emphasizes that the purpose behind the formal rules of acceptance is to insure that the parties know who is bound to the contract and when. Calamari, *Contracts,* secs. 28, 30 (1970); Grismore, *Contracts,* secs. 45, 46 (1965).

In this case it really cannot be seriously contended that a binding contract has not been formed where a city passes a resolution accepting a bid conditional only on

---

[3] *See also, Aqua-Tech v. Como Lake Protect. & Rehab. Dist.,* 71 Wis.2d 541, 550, 239 N.W.2d 25 (1976); *Blum v. Hillsboro,* 49 Wis.2d 667, 671, 183 N.W.2d 47 (1971); *Bechthold v. Wauwatosa,* 228 Wis. 544, 277 N.W. 657, 280 N.W. 320 (1938).

federal approval and so informs the bidder, and then within the specified time limit, advises the bidder such approval has been obtained and the contracts have been dispatched. The city's commitment to the contract is clear and the fact that the city chose to dispatch the contracts by way of a private mail service rather than in the United States mail does not release the bidder from his bid.

There is no suggestion and the city does not attempt to contend that it was not bound to Wenzel's bid as soon as EPA approval was granted. Under the holding in *L. G. Arnold, Inc., supra,* Wenzel could have enforced the contract against the city at that point. Wenzel's plea for mutuality requires that it too be bound on June 9th.

Although it could be argued that the bid proposal requirements that the contracts be executed within five days of the award and work commence within 10 days of the award suggested that the term "award" meant the receipt of the contracts, we believe it is clear that the bid bond was activated by the "acceptance" of the bid within 45 days. The bid bond was required pursuant to sec. 62.15(3), Stats.:

"(3) ADVERTISEMENT FOR BIDS. After the plans, specifications and form of contract have been prepared, the board of public works shall advertise for proposals for doing such work by publishing a class 2 notice, under ch. 985. No bid shall be received unless accompanied by a certified check or a bid bond equal to at least 5% but not more than 10% of the bid payable to the city as a guaranty that if his bid is accepted he will execute and file the proper contract and bond within the time limited by the city. If the successful bidder so files the contract and bond, upon the execution of the contract by the city the check shall be returned. In case he fails to file such contract and bond the amount of the check or bid bond shall be forfeited to the city as liquidated damages. The notice published shall inform bidders of this requirement."

The statutory bond is intended to protect the city from the time it has committed itself to accept a bid. The statute does not use the term "award," thereby recognizing, we believe, that there will necessarily be a time lapse between the passage of a resolution to award a contract to a bidder and the actual tender of formal contract documents. In this case the "time limited by the city" was "five days from the award," recognizing that the formal award or receipt of the contract documents would necessarily follow and not be simultaneous with the bid acceptance.

We believe the conclusion reached by the trial court was correct. It is consistent with the purposes of the public bidding statutes. The city's earlier provisional acceptance of the bid became final and binding on both parties when the EPA approved the project and this approval was communicated to Wenzel and the contract sent to it on the 45th day. The actions of the parties constituted final and complete acceptance and award of the contract which bound Wenzel to its bid and invoked the provisions of its bid bond.

When Wenzel prepared his bid he knew he had to submit a bid which would bind his company for 45 days. Even under appellants' view of the proposal a formal contract could have been executed on day 45. The bidders had to take into account the risk that a contract would not be awarded until the end of the 45-day period. The fact that Wenzel first had the contract documents in hand on Monday after being notified of their award on Friday does not relieve it of its obligation arising out of its bid.[4]

---

[4] The problems created by EPA approval requirements were considered by the New Jersey Supreme Court in *Terminal Const. Corp. v. Atlantic City Sewer. Auth.*, 67 N.J. 403, 341 Atl.2d 347 (1975). The New Jersey bidding statute required that awards be made within 30 days of the bid opening. Because EPA approval

The appellants next contend that in the event it is determined they are liable because of the refusal of Wenzel to execute the contract, their liability is limited to the actual damages sustained by the city.

The second lowest bid was $46,841 higher than the bid of Wenzel. Because of state and federal funding, the city was required to pay 20 percent of the contract cost, or $9,368.20 of the excess over the Wenzel bid. The appellants rely on a provision of the bid bond which states that if the principal defaults it may pay to the city,

". . . the damages which the Owner may suffer by reason of such failure, not exceeding the penalty of this bond, . . ."

Subsequent to the decision of the trial court but prior to entry of judgment, the city was tendered the sum of $9,368.20. It is the contention of the appellants that the terms of the bid bond permitted the payment of actual damages as an alternative to the statutory liquidated damages requirement.

Sec. 62.15 (3), Stats., Advertisement For Bids, requires that when advertising for bids the city must thereby inform the prospective bidder of the requirements for a bid bond and generally specify the terms of the bond. The statute fixes the amount of the damages sustained by the city as liquidated damages in the amount of the bid bond regardless of whether the actual damages sustained by the city are greater or less than the amount of the bid bond. It is the contention of the appellants that their liability is limited to actual damages because the advertisement for bids did not specifically contain the statutory language relating to liquidated damages.

In *Lake Geneva v. State Improvement Co.*, 45 Wis.2d 50, 172 N.W.2d 176 (1969), this court considered the pro-

could not be secured in that short period of time the court held that an award made subject to EPA approval would satisfy the statute's requirement.

visions of sec. 62.15(3), Stats. However, the facts of *Lake Geneva* did not present the issue of the instant case and it was therefore not resolved. The decision clearly stated that "[w]e need not reach the [issue] . . . until we have a case in which a bidder has backed out on an accepted low bid *and also* has paid the municipality the actual damages it has sustained. . ." *Id.* at 55, 56. *Lake Geneva* made reference to 12 Am. Jur.2d, *Bonds,* pp. 495, 496, sec. 26 (1964), which states:

"**§26. Bonds given pursuant to statutory requirement; reading statute into bond.**

"While a bond is none the less a contract because it is required by statute, statutory bonds are construed in the light of the statute creating the obligation secured and the purposes for which the bond is required, as expressed in the statute. It is a generally accepted principle that the statute which provides for the giving of a bond becomes a part of the bond and imports into the bond any conditions prescribed by the statute but not in fact included in the bond as written. If the statute prescribes the conditions of the bond, they will be read into the bond to determine liability thereunder although the bond does not include all of them. It is presumed that the intention of the parties was to execute such a bond as the law required. . . . While the statute will be read into the bonds which do not conform in every material respect to the requirements of the statute, conditions in the bond not prescribed by the statute will be eliminated as surplusage.

" . . . .

"There is however, a distinction to be observed between bonds given to private concerns, where both parties have full liberty of contract, and bonds given pursuant to a statute for the public benefit where the law, with all its terms, no more and no less, becomes a part of the bonding contract. . . ." *Id.* at 495, 496.

This rule was repeated in *American Casualty Co. of Reading, Penn. v. Irvin,* 426 Fed.2d 647, 650 (5th Cir. 1970), where the court said that bond provisions which conflict with the statute's requirements can be eliminated as surplusage and denied legal effect. In *Stevens v. Farmers Elevator Mutual Insurance Co.,* 197 Kan. 74, 415 Pac.2d

236, 240 (1966), the court said a party could not limit its liability by deviating from the statutory requirements.

The liquidated damages provision of a bid bond is made mandatory by the statute. The bond is necessary "to indemnify the municipality for the damages and expenses sustained or incurred" when the successful bidder refuses to execute a contract. *Gaastra v. Village of Fairwater,* 77 Wis.2d 7, 13, 252 N.W.2d 60 (1977). A city does not and cannot waive this statutory requirement by use of a bid bond form that does not comply with the statute. If we were to hold otherwise the result would be that the damages would not be those fixed by the legislature, but the damages as fixed by the court. We conclude the valid mandate of the legislature fixing liquidated damages should be upheld.[5]

Although the bid bond did not contain all of the statutorily-mandated language, we are of the opinion that the absence of such language cannot be used to circumvent the statutory liquidated damages provision. The bond stated that liability for ten percent of the amount of the bid bond was assumed and the surety is liable for such amount as liquidated damages.

Finally, the city, on its cross-appeal, challenges the denial of the trial court of the city's claim for prejudgment interest.

In the first judgment the trial court granted interest, as requested, from June 23, 1972. However, in response to appellants' motion to amend the judgment, the trial court deleted the prejudgment interest award on the ground that the amount due was not determinable because of "some other factor," *i.e.,* that *Nelson Inc. v. Sewerage Comm. of Milwaukee, supra,* constituted a change in the law.

---

[5] *See: Bechthold v. Wauwatosa, supra,* at 564, 565.

In *Wyandotte Chemicals Corp. v. Royal Electric Mfg. Co.*, 66 Wis.2d 577, 225 N.W.2d 648 (1975), this court reviewed the law relating to prejudgment interest. Prejudgment interest is awarded where the amount of damages is determinable, either because the damages are liquidated or because there is a reasonably certain standard of measurement. However, prejudgment interest will not be granted where the damages are determinable but "some other factor" prevents the party from determining the amount that should be tendered. Other factors recognized have included a successful challenge to the constitutionality of the statute under which the damages were computed, *Luber v. Milwaukee County*, 47 Wis.2d 271, 284, 177 N.W.2d 380 (1970), a dispute regarding a credit due on the damages that were being withheld, *State ex rel. Schilling & Klingler v. Baird*, 65 Wis. 2d 394, 402, 222 N.W.2d 666 (1974), joint liability where allocation of damages is necessary, *City of Franklin v. Badger Ford Truck Sales*, 58 Wis.2d 641, 657, 207 N.W. 2d 866 (1973), and a substantially inflated claim as viewed with hindsight in light of the damages actually awarded, *Pappas v. Jack O. A. Nelson Agency*, 81 Wis.2d 363, 375, 260 N.W.2d 721 (1977). A mere denial of liability is not a sufficient "other factor." *Wyandotte, supra*, at 584, 585.

In *Lake Geneva v. States Improvement Co., supra*, the court held that prejudgment interest should be granted on the liquidated damages due under the bond from the date the executed contract was to be returned.

The trial court seems to have denied prejudgment interest because of its conclusion that under the holding of *Nelson Inc. v. Sewerage Comm. of Milwaukee, supra*, a genuine dispute existed in the instant case regarding the amount due. The trial court also said that since no actual damages were shown the appellants were entitled to

assume that the $32,000 claim was grossly inflated. In *Wyandotte Chemicals Corp. v. Royal Electric Mfg., supra,* the court said the value of the hindsight test was limited to eliminating prejudgment interest for the claim that is shown to have been inflated when compared to the actual award. The grossly inflated claim exception cannot be relied on here because the amount of the liquidated damages was fixed by statute. The trial court concluded that the damages were liquidated as of July 16, 1976, the date of the opinion in favor of the city, and therefore granted post-judgment interest from July 23, 1976. In fact, the genuine dispute the trial court relied on was a dispute over liability and not over the amount due. The trial court never gave any credence to the actual damages argument. The genuine dispute created by the application of *Nelson Inc. v. Sewerage Comm. of Milwaukee, supra,* related to the acceptance and award issue. This was a liability question which did not affect the computation of damages.

The fact that the court initially found for the appellants does not affect the claim for prejudgment interest. In *Fehrman v. Smirl,* 25 Wis.2d 645, 131 N.W.2d 314 (1964), the first judgment absolved the defendant and the second held him liable. The court granted interest from the date of the first judgment because the damages were liquidated at that point and the second trial was limited to the liability issue. This rule was repeated in *Moldenhauer v. Faschingbauer,* 33 Wis.2d 617, 622, 148 N.W.2d 112 (1967). In *Metcalf v. City of Watertown,* 68 Fed. 859 (7th Cir. 1895), where a judgment for the defendant was reversed, the circuit court allowed interest from the date the trial court had determined the damages. These cases point out that interest runs from the date the damages are liquidated or determinable regardless of the existence of legal issues regarding liability for those damages. Further, we do not believe the *Nelson Case* changed the law as drastically as the trial court

opined. The same result could properly have been reached prior to *Nelson Inc. v. Sewerage Comm. of Milwaukee, supra,* based upon the rationale of *L. G. Arnold, Inc. v. Hudson, supra,* and *Cullen v. Rock County, supra.*

The city is entitled to prejudgment interest from June 23, 1972, the date the executed contract was to have been returned, and the judgment is modified to so provide.

*By the Court.*—Judgment modified, and as modified affirmed.